Jill O. Gibson, OSB #973581
jill@gibsonlawfirm.org
121 SW Morrison St, 11th Floor
Portland, OR 97204
Tel: 503.686.0486
Fax: 866.511.2585

Milton L. Chappell, DCB #936153
(*pro hac vice* to be filed)
mlc@nrtw.org
8001 Braddock Rd, Suite 600
Springfield, VA 22151
Tel: 703.770.3329

James G. Abernathy, OSB #161867
JAbernathy@freedomfoundation.com
Rebekah C. Millard, OSB #121199
RMillard@freedomfoundation.com
PO Box 552
Olympia, WA 98507
Tel: 360.956.3482

*Attorneys for Plaintiffs and the Requested Class*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **LORIANN ANDERSON, KERRIN FISCUS, KENNETH HILL, RENE LAYTON, MICHAEL MILLER, BERNARD PERKINS, DENNIS RICHEY, KATHIE SIMMONS, KENT WILES, and MELINDA WILTSE,** as individuals and representatives of the respective requested classes, | Case No.<br><br>**COMPLAINT – CLASS ACTION**<br><br>**Constitutional Violation Action (42 U.S.C. § 1983)** |
| Plaintiffs, | |
| v. | |

**SERVICE EMPLOYEES INTERNATIONAL UNION (SEIU) LOCAL 503, OREGON PUBLIC EMPLOYEES UNION (OPEU); OREGON AFSCME COUNCIL 75**, labor organizations; **KATY COBA**, in her official capacity as Director of the Oregon Department of Administrative Services; **JACKSON COUNTY, LANE COUNTY, MARION COUNTY, WALLOWA COUNTY, CITY OF PORTLAND**, political subdivisions of the State of Oregon; **WESTERN OREGON UNIVERSITY**, a public higher educational institution; **NORTHWEST SENIOR & DISABILITY SERVICES**, a local intergovernmental agency,

Defendants.

## INTRODUCTION

1.　　On June 27, 2018, the Supreme Court held it unconstitutional for public-sector unions and employers to collect or deduct union dues or fees ("forced fees") from public employees without their affirmative consent and knowing waiver of their First Amendment rights. *Janus v. AFSCME, Council* 31, 138 S. Ct. 2448, 2486 (2018).

2.　　Plaintiffs are public employees in bargaining units represented by at least one of the union Defendants or its affiliates. Notwithstanding Plaintiffs' post-*Janus* written revocations to their respective Defendant union and public employer of their pre-*Janus* authorizations for the deduction of union dues from their wages, Plaintiffs' respective Defendants continue to deduct forced fees from their wages without their affirmative consent.

3.　　Plaintiffs' pre-*Janus* deduction authorizations were not and could not have been a knowing waiver of their First Amendment rights.

4.　　Defendants maintain and enforce policies, provisions and requirements under which, after Plaintiffs and other employees in the proposed classes have notified their respective

Defendant union and public employer of their resignation from union membership and revocation of their prior dues deduction authorizations, forced fees continue to be collected from Plaintiffs and other employees in the proposed classes, pursuant to ORS 243.776 and ORS 292.055(3) and the dues deduction checkoff and/or maintenance of membership provisions of the respective collective bargaining agreements, until a specified small window period that occurs months or years in the future.

5.      Defendants' actions and dues deduction revocation restrictions violate the employees' exercise of their First Amendment right not to pay moneys to a union without their affirmative consent and knowing waiver of First Amendment rights.

6.      Plaintiffs seek for themselves and similarly situated employees:

a.)      declaratory judgments that: i.) the revocation restrictions; ii.) the continued deduction of union dues or fees without the employees' affirmative consent and knowing waiver of First Amendment rights; and iii.) the application of ORS 243.776 and ORS 292.055(3) and the dues deduction checkoff and maintenance of membership provisions of the respective collective bargaining agreements are unconstitutional and unenforceable;

b.)      injunctive relief that prohibits the maintenance and enforcement of the unconstitutional statutes, policies, provisions, deductions and other actions that the Court has declared unconstitutional and unenforceable;

c.)      compensatory damages of all dues and fees deducted from their wages after they informed their respective Defendant(s) that such deductions were without their consent and knowing waiver of their First Amendment rights;

d.)      nominal damages for the violation of their First Amendment rights; and

e.)      reasonable attorneys' fees.

## JURISDICTION AND VENUE

7.      This is an action that arises under the Federal Civil Rights Act of 1871, 42 U.S.C. § 1983, to redress the deprivation, under color of state law, of rights, privileges, and immunities secured to Plaintiffs and class members by the Constitution of the United States, particularly the First and Fourteenth Amendments.

8.      The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

9.      This action is an actual controversy in which Plaintiffs seek a declaration of their rights under the Constitution of the United States. Pursuant to 28 U.S.C. §§ 2201-2202, this Court may declare the rights of Plaintiffs and grant further necessary and proper relief based thereon, including injunctive relief pursuant to Federal Rule of Civil Procedure 65.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the claims arise in this judicial district and Defendants operate and do business in this judicial district.

11.     Because a substantial part of the events giving rise to the claims occurred in counties covered by the Portland Division, assignment to that Division is proper. L.R. 3-2.

## PARTIES

12.     Plaintiff Loriann Anderson ("Anderson") resides and works in Polk County, Oregon as a public employee of Defendant Western Oregon University in a bargaining unit represented by Defendant SEIU Local 503.

13.     Plaintiff Kerrin Fiscus ("Fiscus") resides and works in Marion County, Oregon as a public employee of the State of Oregon's Board of Parole and Post-Prison Supervision, a partner

of the Oregon Department of Corrections in a bargaining unit represented by Defendant AFSCME Council 75.

14.     Plaintiff Kenneth Hill ("Hill") resides in Polk County, Oregon and works in Marion County, Oregon as a public employee of the State of Oregon's Military Department in a bargaining unit represented by AFSCME Local 3932 and Defendant AFSCME Council 75.

15.     Plaintiff Rene Layton ("Layton") resides and works in Wallowa County, Oregon as a public employee of Defendant Wallowa County's District Attorney's Office in a bargaining unit represented by the Wallowa County Courts Local 924 and Defendant SEIU 503.

16.     Plaintiff Michael Miller ("Miller") resides in Canyon County, Idaho, and works Malheur County, Oregon as a public employee of the State of Oregon's Department of Corrections in a bargaining unit represented by Defendant AFSCME Council 75.

17.     Plaintiff Bernard Perkins ("Perkins") resides and works in Lane County, Oregon as a public employee of Defendant Lane County, Oregon in a bargaining unit represented by AFSCME Local 2831-General Unit and Defendant AFSCME Council 75.

18.     Plaintiff Dennis Richey ("Richey") resides and works in Jackson County, Oregon as a public employee of Jackson County, Oregon in a bargaining unit represented by Jackson County Employees Association and Defendant SEIU Local 503.

19.     Plaintiff Kathie Simmons ("Simmons") resides in Washington County, Oregon, and works in Multnomah County, Oregon as a public employee of the City of Portland in a bargaining unit represented by AFSCME Local 189 and Defendant AFSCME Council 75.

20.     Plaintiff Kent Wiles ("Wiles") resides in Linn County, Oregon, and works in Marion County, Oregon as a public employee of the NorthWest Senior & Disability Services in a bargaining unit represented by AFSCME Local 3669 (also known as NorthWest Senior &

Disability Services Local 3669) and Defendant AFSCME Council 75.

21. Plaintiff Melinda Wiltse ("Wiltse") resides and works in Marion County, Oregon as a public employee of Marion County, Oregon in a bargaining unit represented by Marion County Employees Association (also known as Oregon Public Employees Union Local 294) and Defendant SEIU Local 503.

22. Defendant Service Employees International Union Local 503, Oregon Public Employees Union ("SEIU 503"), whose Portland office is located at 6401 SE Foster Road, Portland, Oregon 97206, is a state-wide labor union, affiliated with various other SEIU locals, that enters into numerous collective bargaining agreements with public employers throughout Oregon, including the State of Oregon, which require, pursuant to ORS 243.776 and ORS 292.055(3), the public employer to deduct payments for SEIU 503 and its affiliates from the wages of authorizing public employees.

23. Defendant Oregon AFSCME 75 ("AFSCME 75"), whose Portland office is located at 6025 E Burnside Street, Portland, Oregon 97215, is a state-wide labor union, affiliated with various AFSCME locals, that enters into numerous collective bargaining agreements with public employers throughout Oregon, including the State of Oregon, which require, pursuant to ORS 243.776 and ORS 292.055(3), the public employer to deduct payments for AFSCME 75 and its affiliates from the wages of authorizing public employees.

24. Defendant Katy Coba ("Coba") is Director of the Oregon Department of Administrative Services ("DAS"), the agency designated by ORS 243.696 to collectively bargain

with Defendants AFSCME 75[1] and SEIU 503[2] and/or their affiliates, on behalf of numerous State agencies and departments, including, but not limited to, the Oregon Department of Corrections, and the State of Oregon Military Department, and is sued in her official capacity. Under Defendant Coba's authority, DAS or the respective state agency or department employers are responsible for deducting dues from the wages of Plaintiffs Fiscus, Hill, and Miller, and remitting the respective dues to AFSCME 75 or SEIU 503, pursuant to the Dues Deduction(s) or Payroll Deduction(s) sections of the respective collective bargaining agreements.

25.     Defendant Western Oregon University, whose office is located at 345 Monmouth Ave N, Monmouth, Oregon 97361, is a public higher educational institution and collectively bargains with Defendant SEIU 503.[3] The University is responsible for deducting dues from Plaintiff Anderson's wages and remitting the dues to SEIU 503, pursuant to Article 10, Section 13(A) - Dues Deduction of the collective bargaining agreement.

26.     Defendant Wallowa County, whose office is located at 101 South River Street Enterprise, Oregon 97828, is a political subdivision in the State of Oregon and collectively bargains with Wallowa County Courts Local 924 and Defendant SEIU 503.[4] The County is responsible for deducting dues from Plaintiff Layton and remitting the dues to SEIU 503, pursuant

---

[1] 2017-2019 AFSCME 75 Collective Bargaining Agreement with DAS for DOC Security. Available at: https://www.oregon.gov/das/HR/CBA/AFSCME%20DOC%20Security%202017-19%20amended.pdf (last visited November 15, 2018); 2017-2019 AFSCME 75 Collective Bargaining Agreement with DAS for DOC Security Plus. Available at: https://www.oregon.gov/das/HR/CBA/AFSCME%20DOC%20Security%20Plus%2017-19%20amended.pdf (last visited November 15, 2018); and 2017-2019 AFSCME 75 Collective Bargaining Agreement with DAS for Oregon Military Department. Available at: https://www.oregon.gov/das/HR/CBA/AFSCME%20Oregon%20Military%20Department%202017-19.pdf (last visited November 15, 2018).
[2] 2015-2019 SEIU 503 Collective Bargaining Agreement with DAS. Available at: https://www.oregon.gov/das/HR/CBA/SEIU%20Full%20Master%20Agreement%202015-19%20with%20Mid-Term%20Language.pdf (last visited November 15, 2018).
[3] 2015-2019 SEIU 503 Collective Bargaining Agreement with [various public universities, including] Western Oregon University. Available at: http://www.wou.edu/hr/files/2015/05/2015-19.CBA_.FINAL_.pdf (last visited November 15, 2018).
[4] 2017-2020 SEIU 503 Collective Bargaining Agreement with Wallowa County. Available at: http://seiu503.org/wp-content/uploads/2017/09/Wallowa-Co-Courts-final-CBA-17-20.pdf (last visited November 15, 2018).

to Article 3.1 - Check-off of the collective bargaining agreement.

27.     Defendant Lane County, whose office is located at 125 East 8th Avenue, Eugene, Oregon 97401, is a political subdivision in the State of Oregon and collectively bargains with AFSCME Local 2831, an affiliate of Defendant AFSCME 75.[5] The County is responsible for deducting dues from Plaintiff Perkins' wages and remitting the dues, directly or indirectly, to AFSCME Local 2831 and AFSCME 75, pursuant to Article 3, Section 2 – Deduction of Dues and Fees of the collective bargaining agreement.

28.     Defendant Jackson County, whose office is located at 10 South Oakdale Avenue, Medford, Oregon 97501, is a political subdivision in the State of Oregon and collectively bargains with the Jackson County Employees Association and Defendant SEIU 503.[6] The County is responsible for deducting dues from Plaintiff Richey's wages and remitting the dues to SEIU 503, pursuant to Article 4, Section 2 – Dues Deduction of the collective bargaining agreement.

29.     Defendant City of Portland, whose office is located at 1221 Southwest 4th Avenue, Room 110, Portland, Oregon 97204, is a political subdivision in the State of Oregon and collectively bargains with AFSCME Local 189 and Defendant AFSCME 75.[7] The City is responsible for deducting dues or fees from Plaintiff Simmons' wages and remitting the dues to AFSCME 75, pursuant to Article 3 – Dues Checkoff of the collective bargaining agreement.

30.     Defendant NorthWest Senior & Disability Services ("NWSDS"), whose Salem office is located at 3410 Cherry Ave Northeast, Salem, Oregon 97301, is a local intergovernmental

---

[5] 2017-2020 AFSCME Local 2831-General Unit Agreement with Lane County. Available at: https://lanecounty.org/UserFiles/Servers/Server_3585797/Image/Government/County%20Departments/Human%20Resources/Collective%20Bargaining%20Agreements/AFSCME%202017-2020%20CBA%20FINAL%20for%20web.pdf (last visited November 15, 2018).
[6] 2016-2019 Jackson County Employees Association SEIU 503 Collective Bargaining Agreement with Jackson County. Available at: http://jacksoncountyor.org/Departments/Human-Resources/Labor-Agreements?EntryId=38540&Command=Core_Download&method=attachment (last visited November 15, 2018).
[7] 2017-2020 District Council of Trade Unions, AFSCME Local 189 Labor Agreement with City of Portland. Available at: https://www.portlandoregon.gov/bhr/article/507808 (last visited November 15, 2018).

entity and collectively bargains with AFSCME Local 3669 and Defendant AFSCME 75.[8] NWSDS is responsible for deducting dues or fees from Plaintiff Wiles' wages and remitting the dues, directly or indirectly, to AFSCME Local 3669 and AFSCME 75, pursuant to Article 3.3 – Deduction of the collective bargaining agreement.

31.     Defendant Marion County, whose office is located at 555 Court Street Northeast, Suite 5232, Salem, Oregon 97301, is a political subdivision in the State of Oregon and collectively bargains with MCEA 294 and Defendant SEIU 503.[9] The County is responsible for deducting dues or fees from Plaintiff Wiltse's wages and remitting the dues, directly or indirectly, to MCEA 294 and SEIU 503, pursuant to Article 3, Sections 4-8 – Dues Deduction of the collective bargaining agreement.

## FACTUAL ALLEGATIONS

32.     After *Janus* was decided, Plaintiff Anderson notified Defendants SEIU 503 on or about November 1, 2018 and Western Oregon University on or about October 31, 2018 in writing of her resignation from union membership and revocation of her pre-*Janus* authorization for the deduction of union dues or fees from her wages.

33.     On October 8, 2018, SEIU 503 accepted Anderson's resignation from union membership but denied the revocation of her dues deductions:

> We are in receipt of your letter requesting to resign your membership with SEIU Local 503, OPEU. Your request will be deemed effective upon receipt of your letter . . . . We also wish to remind you that, under the terms of the dues checkoff authorization form you signed, dues deductions cannot be terminated except in the periods set forth in the authorization . . . . Accordingly, we shall hold the cancellation request on file until the first

---

[8] 2018-2019 AFSCME Local 3669 Collective Bargaining Agreement with NorthWest Senior & Disability Services. Available at: https://www.oregonafscme.org/docs/contracts/NorthWest_Senior___Disability_Services_L3669.pdf (last visited November 15, 2018).
[9] 2016-2020 SEIU 503 Collective Bargaining Agreement with Marion County. Available at: http://seiu503.org/wp-content/uploads/2017/09/MCEA-Contract-2016-2018-Final.pdf (last visited November 15, 2018).

date cancellation would be appropriate. In your case, that date is August 19. At that point, the Union will take appropriate steps to have your dues checkoff cancelled.

34.     Defendant Western Oregon University has not responded but continues deducting union dues from Anderson's paychecks after she withdrew her consent.

35.     After *Janus* was decided, Plaintiff Fiscus notified Defendant AFSCME 75 on or about July 6, 2018 and the Oregon Department of Corrections on or about October 31, 2018, in writing of her resignation from union membership and revocation of her pre-*Janus* authorization for the deduction of union dues or fees from her wages.

36.     On July 27, 2018, AFSCME 75 accepted Fiscus' resignation from union membership but denied the revocation of her dues deductions:

> Our office is in receipt of your letter requesting to revoke your member status. We have changed your status in our database to non-member dues payer. Consistent with this change in status, you will no longer be eligible to vote in elections or contract ratifications, you will no longer be eligible to hold elected office in the union, and you will no longer be eligible for member-only benefits.

> The collective bargaining agreement between AFSCME and your employer provides that members who resign their membership shall continue to pay dues for more than 12 months. Notwithstanding the provision, as an act of good faith, we will ask your employer to terminate your dues on 1/12/2019. This date is the open period from the most recent membership card you signed.

37.     Defendant Coba through the Department of Corrections or DAS continues deducting union dues from Fiscus' paychecks after she withdrew her consent.

38.     After *Janus* was decided, Plaintiff Hill notified Defendant AFSCME 75 on or about June 30, 2018, and the Oregon Military Department on or about August 7, 2018 in writing of his resignation from union membership and revocation of his pre-*Janus* authorization for the deduction of union dues or fees from his wages.

39.    On July 31, 2018, AFSCME 75 accepted Hill's resignation from union membership but denied the revocation of his dues deductions:

> Our office is in receipt of your letter requesting to revoke your member status. We have changed your status in our database to non-member dues payer. Consistent with this change in status, you will no longer be eligible to vote in elections or contract ratifications, you will no longer be eligible to hold elected office in the union, and you will no longer be eligible for member-only benefits.
>
> The collective bargaining agreement between AFSCME and your employer provides that members who resign their membership shall continue to pay dues for more than 12 months. Notwithstanding the provision, as an act of good faith, we will ask your employer to terminate your dues on 12/30/2018. This date is the anniversary of the date that you became a member.

40.    Defendant Coba through the Oregon Military Department or DAS continued deducting union dues from Hill's paychecks after he withdrew his consent.

41.    On November 5, 2018, AFSCME 75 notified Hill that his request was processed, and his employer would be notified to cease dues deductions. Hill had dues deducted on November 1, 2018 and is awaiting his next pay period.

42.    After *Janus* was decided, Plaintiff Layton notified Defendants SEIU 503 with a copy to Wallowa County, on or about August 9, 2018, in writing of her resignation from union membership and revocation of her pre-*Janus* authorization for the deduction of union dues or fees from her wages.

43.    On August 9, 2018 SEIU 503 accepted Layton's resignation from union membership but denied the revocation of her dues deductions:

> We are in receipt of your letter requesting to resign your membership with SEIU Local 503, OPEU. Your request will be deemed effective upon receipt of your letter . . . . We also wish to remind you that, under the terms of the dues checkoff authorization form you signed, dues deductions cannot be terminated except in the periods set forth in the authorization . . . .  Accordingly, we shall hold the cancellation request on file until the first date cancellation would be appropriate. In

your case, that date is March 3. At that point, the Union will take appropriate steps to have your dues checkoff cancelled.

Then on October 11, 2018, SEIU 503 sent Layton another letter stating that the "Dues Checkoff form" she had signed on or about June 22, 2016, required her "to pay dues to the union until at least May 8, 2019," not March 3, 2019.

44.    Defendant Wallowa County has not responded in writing but continues deducting union dues from Layton's paychecks after she withdrew her consent.

45.    After *Janus* was decided, Plaintiff Miller notified Defendant AFSCME 75 on or about August 1, 2018 and the Oregon Department of Corrections on or about October 31, 2018, in writing of his resignation from union membership and revocation of his pre-*Janus* authorization for the deduction of union dues or fees from his wages.

46.    On August 9, 2018, AFSCME 75 accepted Miller's resignation from union membership but denied the revocation of his dues deductions:

> Our office is in receipt of your letter requesting to revoke your member status. We have changed your status in our database to non-member dues payer. Consistent with this change in status, you will no longer be eligible to vote in elections or contract ratifications, you will no longer be eligible to hold elected office in the union, and you will no longer be eligible for member-only benefits.
>
> Notwithstanding conflicting provisions in your collective bargaining agreement, as an act of good faith, we will ask the employer to terminate your dues on 1/9/2019. This date is the anniversary of the date that you became a member.

47.    Defendant Coba through the Department of Corrections or DAS continued deducting union dues from Miller's paychecks after he withdrew his consent.

48.    On November 6, 2018, AFSCME 75 notified Miller that his request was processed, and his employer would be notified to cease dues deductions. Miller had dues deducted on November 1, 2018 and is awaiting his next pay period.

49.     After *Janus* was decided, Plaintiff Perkins notified Defendants AFSCME 75 on or about August 2, 2018 and Lane County on or about November 1, 2018 in writing of his resignation from union membership and revocation of his pre-*Janus* authorization for the deduction of union dues or fees from his wages.

50.     On August 16, 2018, AFSCME 75 accepted Perkins' resignation from union membership but denied the revocation of his dues deductions:

> Our office is in receipt of your letter requesting to revoke your member status. We have changed your status in our database to non-member dues payer. Consistent with this change in status, you will no longer be eligible to vote in elections or contract ratifications, you will no longer be eligible to hold elected office in the union, and you will no longer be eligible for member-only benefits.
>
> Notwithstanding conflicting provisions in your collective bargaining agreement, as an act of good faith, we will ask the employer to terminate your dues on 2/5/2019. This date is the open period from the most recent membership card you signed.

51.     Defendant Lane County continues deducting union dues from Perkins' paychecks after he withdrew his consent.

52.     After *Janus* was decided, Plaintiff Richey notified Defendants SEIU 503 and Jackson County in or around August 2018 in writing of his resignation from union membership and revocation of his pre-*Janus* authorization for the deduction of union dues or fees from his wages.

53.     On September 6, 2018 SEIU 503 accepted Richey's resignation from union membership but denied the revocation of his dues deductions:

> I want to make sure you understand that when you joined the union you committed to pay your union dues for at least one year. This commitment is automatically renewed every year, unless you notify the union within the time frame specified on the membership form. Your drop eligibility date will be from 1/17/2019-1/31/2019.

> You can drop your membership now, but you will lose all of your member rights, such as being able to vote on your negotiated union contract, and your union dues will continue until 1/17/2019, at which time your dues will be canceled, unless we hear otherwise from you before then.

54.    Defendant Jackson County continues deducting union dues from Richey's paychecks after he withdrew his consent.

55.    After *Janus* was decided, Plaintiff Simmons notified Defendants AFSCME 75 on or about June 27, 2018 and City of Portland on or about November 6, 2018 in writing of her resignation from union membership and revocation of her pre-*Janus* authorization for the deduction of union dues or fees from her wages.

56.    On July 16, 2018 AFSCME 75 accepted Simmons' resignation from union membership but denied the revocation of her dues deductions:

> I am in receipt of your letter requesting to resign your member status. I have changed your status in our database to non-member dues payer. As a non-member, you will no longer have the rights most other represented employees have, including the right to vote on the collective bargaining agreement under which you are covered or in any local elections. If you wish to preserve your membership rights and do not want this change to occur please let us know immediately.
>
> The current Local 189 collective bargaining agreement contains maintenance language that obligates you to pay union dues until the open window period which begins March 4, 2019 On that date your status will be changed to a non-dues payer and no further dues will be collected from you.

57.    Defendant City of Portland continued deducting union dues from Simmons' paychecks after she withdrew her consent.

58.    On November 7, 2018, AFSCME 75 notified Simmons that her request was processed, and her employer would be notified to cease dues deductions. Simmons had dues deducted on November 8, 2018 and is awaiting her next pay period.

59.    After *Janus* was decided, Plaintiff Wiles notified Defendants AFSCME 75 on or

about August 8, 2018 and NorthWest Senior & Disability Services on July 31, 2018 in writing of

his resignation from union membership and revocation of his pre-*Janus* authorization for the

deduction of union dues or fees from his wages.

60.     On August 16, 2018 AFSCME 75 accepted Wiles' resignation from union

membership but denied the revocation of his dues deductions:

> Our office is in receipt of your letter requesting to revoke your member status. We have changed your status in our database to non-member dues payer. Consistent with this change in status, you will no longer be eligible to vote in elections or contract ratifications, you will no longer be eligible to hold elected office in the union, and you will no longer be eligible for member-only benefits.
>
> Notwithstanding conflicting provisions in your collective bargaining agreement, as an act of good faith, AFSCME will ask the employer to terminate your dues on 1/11/2019. This date is the open period from the most recent membership card you signed.

61.     Defendant NorthWest Senior & Disability Services responded to Wiles, "If you

would like information on changing your status as a member of the union, we need to refer you to

an AFSCME representative for any questions you may have." Defendant NorthWest Senior &

Disability Services continues deducting union dues from Wiles' paycheck after he withdrew his

consent.

62.     After *Janus* was decided, Plaintiff Wiltse notified Defendants SEIU 503 on or about

July 27, 2018 and Marion County on or about August 9, 2018 in writing of her resignation from

union membership and revocation of her pre-*Janus* authorization for the deduction of union dues

or fees from her wages.

63.     On August 1, 2018 SEIU 503 accepted Wiltse's resignation from union

membership but denied the revocation of her dues deductions:

> We are in receipt of your letter requesting to resign your membership with SEIU Local 503, OPEU. Your request will be deemed effective upon receipt of your letter, and your employer will promptly be informed of your resignation from Union

membership. Please understand, however, that resignation from the Union will result in the immediate cancellation of life insurance coverage and other benefits of Union membership that have been provided to you.

We also wish to remind you that, under the terms of the dues checkoff authorization form you signed, dues deductions cannot be terminated except in the periods set forth in the authorization. (We have included a copy of your authorization for your reference). Accordingly, we shall hold the cancellation request on file until the first date cancellation would be appropriate. In your case, that date is June 27. At that point, the Union will take appropriate steps to have your dues checkoff cancelled.

64.     Defendant Marion County continues deducting union dues from Wiltse's paychecks after she withdrew her consent.

65.     AFSCME 75's membership and checkoff authorization form,[10] which the respective Plaintiffs and class members signed prior to *Janus*, contains a restriction on the right to revoke that authorization:

This voluntary authorization and assignment is revocable by providing the Union and my Employer written notice of revocation not less than ten (10) days and not more than twenty (20) days before the yearly anniversary of the signing of this membership card, unless an applicable collective bargaining agreement imposes other limitations.[11]

66.     AFSCME 75's membership and checkoff authorization form fails to inform potential signatories: (1) that they have a First Amendment right not to subsidize the union and its speech; or (2) that, by signing the card, they are waiving their First Amendment right to not subsidize the union and its speech at any time and that they will be restricted in the exercise of that First Amendment right until the window period stated in the form.

---

[10] AFSCME 75's online membership and checkoff authorization form is available at https://www.oregonafscme.org/membership_card/ (last visited Nov. 15, 2018).

[11] The AFSCME collective bargaining agreements covering Plaintiffs Fiscus, Hill, Miller, Perkins, Simmons, and Wiles contain maintenance of membership provisions that require all union members of the bargaining unit to "maintain their Union membership for the duration of the collective bargaining agreement" and limit the revocation of their membership to only "the last two weeks of the term" or "the 30-day period prior to the expiration" of the agreement. That is March 4-8, 2019 for Simmons; June 1-30, 2019 for Fiscus, Hill, Miller; Dec. 2-31, 2019 for Wiles; and June 1-30, 2020 for Perkins.

67.     SEIU Local 503's membership and checkoff authorization form,[12] which the respective Plaintiffs and class members signed prior to *Janus*, contains a restriction on the right to revoke that authorization:

> This authorization is irrevocable for a period of one year from the date of execution and from year to year thereafter unless not less than thirty (30) and not more than forty-five (45) days prior to the end of any annual period or the termination of the contract between my employer and the Union, whichever occurs first, I notify the Union and my employer in writing, with my valid signature, of my desire to revoke this authorization.

68.     SEIU Local 503's membership and checkoff authorization form fails to inform potential signatories: (1) that they have a First Amendment right not to subsidize the union and its speech at any time; and (2) that, by signing the card, they are waiving their First Amendment right not to subsidize the union and its speech at any time and that they will be restricted in the exercise of that First Amendment right until the window period stated in the form.

69.     Pursuant to ORS 243.776 and ORS 292.055(3) and the checkoff and maintenance of membership provisions of the respective collective bargaining agreements, the Defendants enforce those restrictions by collecting and deducting union dues and fees from the employees' wages after Plaintiffs and class members have revoked their dues deduction authorizations.

70.     The Defendants have enforced, and will continue to enforce, their revocation restriction policies against Plaintiffs and other public employees by collecting and deducting union dues and fees from public employees who notified their respective Defendants that they resigned union membership and no longer consent to paying union dues.

## CLASS ACTION ALLEGATIONS

71.     Plaintiffs bring this case as a class action pursuant to Federal Rules of Civil

---

[12] SEIU 503's online membership and checkoff authorization form is available at http://local200.seiu503.org/files/2014/07/New-Union-Application.pdf (last visited Nov. 15, 2018).

Procedure 23(b)(1)(A), 23(b)(1)(B), 23(b)(2), and, alternatively, 23(b)(3), for themselves and for all others similarly situated, and any subclasses deemed appropriate by this Court, as described in the following classes:

a) Plaintiffs Anderson, Layton, Richey, and Wiltse are the class representatives of the SEIU 503 Class, which consists of all individuals: i) who are public employees exclusively represented by SEIU 503 or one of its affiliates; ii) who resigned union membership and revoked their consent to the deduction of any union dues or fees; and iii) and dues or fees deductions continued after their revocation notice; and

b) Plaintiffs Fiscus, Hill, Miller, Perkins, Simmons, and Wiles are the class representatives of the AFSCME 75 Class, which consists of all individuals: i) who are public employees exclusively represented by AFSCME 75 or one of its local affiliates; ii) who resigned union membership and revoked their consent to the deduction of any union dues or fees; and iii) dues or fees deductions continued after their revocation notice.

The classes include everyone who comes within the class definition at any time from two years prior to the commencement of this action until the conclusion of this action.

72.     Upon information and belief, there are hundreds of class members in both of the two classes defined above. Their number being so numerous and their residences being in varying locations and jurisdictions across Oregon, joinder is impractical.

73.     There are questions of law and fact common to the respective Plaintiff class representatives and class members in both of the two classes. Factually, the public employer Defendants have continued to deduct and the union Defendants have continued to collect union dues/fees from the Plaintiffs and class members despite their resignation of union membership and revocation of their authorization to the deduction of union dues or fees. Legally, the question is

whether these deductions and collections violate Plaintiffs' and class members' First Amendment rights.

74.    The claims and defenses involving the representative Plaintiffs are typical of other members of the representative classes because the public employer Defendants are still seizing and the union Defendants are still collecting union dues/fees from all Plaintiffs and class members in violation of their First Amendment right not to subsidize union activity without their affirmative consent and knowing waiver of that First Amendment right. Defendants have an identical duty to their representative Plaintiffs and class members regarding these claims.

75.    Plaintiffs can fairly and adequately represent the interests of their representative class and have no conflict with each other, or similarly situated class members. Plaintiffs also have no interest antagonistic to others who have been subjected to deprivation of their First Amendment rights by Defendants' actions in continuing the deductions and collection of union dues or fees without Plaintiffs' and class members' affirmative consent and knowing waiver of their First Amendment rights.

76.    For both of the classes identified above, each respective class action can be maintained under Federal Rule of Civil Procedure 23(b)(1)(A) because the respective Defendants' duty to cease the union dues/fee deductions and collections and return all monies deducted and collected since Plaintiffs' and class members' resignation of union membership and revocation of his or her authorization of union dues/fees deductions, applies equally to the respective Plaintiffs and class members, and the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendants.

77.    For both of the classes identified above, each respective class action can be

maintained under Federal Rule of Civil Procedure 23(b)(1)(B) because an adjudication determining the constitutionality of union dues/fees deductions in the aforementioned circumstances as to one of the class members, as a practical matter, will be dispositive of the interests of all class members or would substantially impair or impede the other class members' ability to protect their interests.

78.     For both of the classes identified above, each respective class action can be maintained under Federal Rule of Civil Procedure 23(b)(2) because the respective Defendants have acted to deprive the respective Plaintiffs and class members of their constitutional rights on grounds generally applicable to all, thereby making declaratory, injunctive, and other equitable relief appropriate with regard to each respective class as a whole.

79.     Alternatively, for both of the classes identified above, each respective class action can be maintained under Federal Rule of Civil Procedure 23(b)(3) because questions of law or fact common to the members of the respective classes predominate over any questions affecting only individual members, in that the important and controlling questions of law or fact are common to all members of each respective class, i.e., whether the aforementioned dues deductions violate their First Amendment rights and whether certain dues deduction agreements constitute a valid waiver of a constitutional right when they are signed before the right not to subsidize union activity was recognized by the U.S. Supreme Court in *Janus v. AFSCME* on June 27, 2018.

80.     Each respective class action is superior to other available methods for the fair and efficient adjudication of the controversy, inasmuch as the individual respective class members are deprived of the same rights by the respective Defendants' actions, differing only in the amount of money deducted. The deducted or collected money for each Plaintiff and class member is known to the respective Defendants and easily calculated from Defendants' business records. The limited

amount of money involved in the case of each individual's claim (union dues/fee deductions at least since each class member resigned from union membership and revoked the authorization for the deduction of any union dues/fees) would make it burdensome for the respective class members to maintain separate actions.

## CAUSES OF ACTION

81. Plaintiffs re-allege and incorporate by reference the paragraphs set forth above in each count of this Complaint.

82. Defendants SEIU 503 and AFSCME 75 act under color of state law, ORS 243.776 and ORS 292.055(3), by maintaining and enforcing their revocation restriction policies and by collecting and having public employers deduct union dues or fees from public employees who have notified SEIU 503 and AFSCME 75 and/or their public employers that they resigned union membership and revoked their prior dues deduction authorization and do not consent to paying union dues or fees.

83. Union Defendants have accepted Plaintiffs' and class members' resignations from union membership and have classified these public employees as nonmembers. Nevertheless, Defendants continue to deduct and collect union dues or fees from these nonmembers.

84. The Supreme Court in *Janus* held that "[n]either an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such payment, unless the employee affirmatively consents to pay." 138 S. Ct. 2448, 2486 (2018).

## COUNT I
### (Individual and Class Cause of Action)

85. Each Defendant's maintenance and enforcement of its dues checkoff and maintenance of membership provisions and restrictive revocation policies and continued deduction

and collection of union dues/fees from the wages of Plaintiffs and class members, pursuant to ORS 243.776 and ORS 292.055(3), without the affirmative authorization and knowing waiver of their First Amendment rights violates Plaintiffs' and class members' First Amendment rights to free speech and association, as secured against state infringement by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

86.     Defendants' restrictive provisions, policies and statutes are not narrowly tailored to serve a compelling state interest and, thus, violate Plaintiffs' and class members' constitutional rights.

87.     Plaintiffs and class members are suffering the irreparable harm and injury inherent in a violation of First Amendment rights, for which there is no adequate remedy at law, as a result of being subjected to Defendants' checkoff and maintenance of membership provisions, restrictive revocation policies and continued deductions and collection of union dues.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs request that this Court:

A.      Enter an order, as soon as practicable, certifying this case as a class action, certifying the two classes as defined in the Complaint, certifying Plaintiffs as class representatives for their representative class, and appointing Plaintiffs' counsel as class counsel for the two classes;

B.      Issue a declaratory judgment that ORS 243.776 and ORS 292.055(3) and the dues checkoff and maintenance of membership provisions of Defendants' respective collective bargaining agreements as applied are unconstitutional under the First Amendment, as secured against state infringement by the Fourteenth Amendment and 42 U.S.C. § 1983, and unenforceable to continue union dues or fees deductions after a public employee revokes the dues deduction authorization.

C.      Issue a declaratory judgment that the membership and checkoff authorization forms Defendants SEIU 503 and AFSCME 75 had signed prior to *Janus v. AFSCME* do not constitute a waiver of a public employee's First Amendment right not to subsidize union activities.

D.      Issue a declaratory judgment that the revocation restriction policies and language put in place by Defendants SEIU 503 and AFSCME 75 are unconstitutional, unenforceable, null and void under the First Amendment, as secured against state infringement by the Fourteenth Amendment and 42 U.S.C. § 1983;

E.      Issue a declaratory judgment that Defendants violate the First Amendment, as secured against state infringement by the Fourteenth Amendment and 42 U.S.C. § 1983, by deduction and collecting union dues or fees from public employees who do not consent to paying union dues or who notify the union that they resign union membership and revoke their dues deduction authorizations.

F.      Permanently enjoin Defendants along with their officers, agents, servants, employees, attorneys, and any other person or entity in active concert or participation with them, from maintaining and enforcing any of the policies, provisions, or actions declared unconstitutional including the unions' restrictive revocation language and policies and the public employers' deduction of union dues or fees from Plaintiffs' and class members' wages who notify the union or employer that they resigned union membership and revoked their authorization of union dues or fees and thus, do not consent to paying union dues or fees;

G.      Require SEIU 503 and AFSCME 75 to refund all union deductions made from the wages of Plaintiffs and class members after their written resignation and revocation, with interest;

H.      Award nominal and compensatory damages.

I.      Award Plaintiffs their costs and reasonable attorneys' fees pursuant to the Civil

Rights Attorneys' Fees Award Act of 1976, 42 U.S.C. § 1988; and

J.     Grant other and additional relief as the Court may deem just and proper.

Date: November 20, 2018

GIBSON LAW FIRM, LLC

By:    *s/Jill Gibson*

Jill Gibson, OSB #973581
jill@gibsonlawfirm.org
Attorneys for Plaintiffs and
the Requested Class