SCOTT A. KRONLAND (Lead Counsel, *pro hac vice*)
MATTHEW J. MURRAY (*pro hac vice*)
AMANDA C. LYNCH (*pro hac vice*)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
E-mail: skronland@altber.com
        mmurray@altber.com
        alynch@altber.com

*Attorneys for Defendants Oregon AFSCME Council
75 and SEIU Local 503, OPEU*

[Additional counsel listed on following page]

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LORIANN ANDERSON, KERRIN FISCUS, KENNETH HILL, RENE LAYTON, MICHAEL MILLER, BERNARD PERKINS, DENNIS RICHEY, KATHIE SIMMONS, KENT WILES, and MELINDA WILTSE, as individuals and representatives of the respective requested classes, | Case No. 3:18-cv-02013-HZ |
| Plaintiffs, | **UNION DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS** |
| v. | |
| SERVICE EMPLOYEES INTERNATIONAL UNION (SEIU) LOCAL 503, OREGON PUBLIC EMPLOYEES UNION (OPEU); OREGON AFSCME COUNCIL 75, labor organizations; KATY COBA, in her official capacity as Director of the Oregon Department of Administrative Services; JACKSON COUNTY, LANE COUNTY, MARION COUNTY, | |

WALLOWA COUNTY, CITY OF
PORTLAND, political subdivisions of the
State of Oregon; WESTERN OREGON
UNIVERSITY, a public higher educational
institution; NORTHWEST SENIOR &
DISABILITY SERVICES, a local
intergovernmental agency,

                Defendants.

_____

[Counsel continued from previous page]

MARGARET S. OLNEY, OSB No. 881359 (Local Counsel)
BENNETT HARTMAN MORRIS & KAPLAN, LLP
210 SW Morrison Street, Suite 500
Portland, OR 97204-3149
Telephone: (503) 227-4600
Facsimile: (503) 248-6800
E-mail: olneym@bennetthartman.com

*Attorney for Defendant Oregon AFSCME Council 75*

JAMES S. COON, OSB No. 771450 (Local Counsel)
THOMAS, COON, NEWTON & FROST
820 SW Second Ave., Suite 200
Portland, OR 97204
Telephone: (503) 228-5222
Facsimile: (503) 273-9175
E-mail: jcoon@tcnf.legal

*Attorney for Defendant SEIU Local 503, OPEU*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iv

INTRODUCTION ............................................................................................... 1

ARGUMENT ...................................................................................................... 2

   I.    Enforcement of Plaintiffs' Voluntary Dues Authorization Agreements Does Not Violate the First Amendment ...................................................................... 2

       A.    Voluntary union membership agreements are not subject to a heightened "waiver" analysis ................................................................. 3

           1.    Enforcement of a voluntary promise does not trigger a heightened waiver requirement .................................................. 3

           2.    The public-employer Defendants' role in processing payroll deductions does not change this analysis ..................................... 5

           3.    Plaintiffs' state action theory would cause numerous private agreements to be subject to First Amendment waiver analysis... 10

       B.    Even if a "waiver" analysis were required, Plaintiffs' voluntary union membership agreements would constitute waivers ............................... 10

           1.    Voluntary contracts to pay money to a union do not require magic words referencing the First Amendment ........................ 10

           2.    Plaintiffs' argument that their affirmative written agreements to join the Unions and pay dues could not be "voluntary" or "knowing" because they were signed before *Janus* is foreclosed by Supreme Court precedent ..................................................... 13

   II.    One-Year Dues Authorization Agreements Do Not Violate Public Policy ........ 18

       A.    Public policy favors the enforcement of contracts ................................. 18

       B.    Plaintiffs' federal labor law cases are not on point here......................... 20

CONCLUSION................................................................................................. 23

# TABLE OF AUTHORITIES

## Federal Court Cases

*Abood v. Detroit Board of Education,*
 431 U.S. 209 (1977) ....................................................................................................2

*Ancheta v. Watada,*
 135 F.Supp.2d 1114 (D. Haw. 2001).............................................................................15, 16

*Babb v. California Teachers Association,*
 __F.Supp.3d__, No. 8:18-cv-00994-JLS-DFM, 2019 WL 2022222
 (C.D. Cal. May 8, 2019) ................................................................................................1

*Bain v. California Teachers Association,*
 156 F.Supp.3d 1142 (C.D. Cal. 2015) ..........................................................................3

*Bain v. California Teachers Association,*
 No. 2:15-cv-02465-SVW-AJW, 2016 WL 6804921 (C.D. Cal. May 2, 2016) .....................8

*Belgau v. Inslee,*
 No. 18-5620 RJB, 2018 WL 4931602 (W.D. Wash. Oct. 11, 2018).....................................3

*Belgau v. Inslee,*
 359 F.Supp.3d 1000 (W.D. Wash. 2019)...........................................................1, 3, 6, 7

*Bermudez v. Service Employees International Union, Local 521,*
 No. 18-cv-04312-VC, 2019 WL 1615414 (N.D. Cal. Apr. 16, 2019).....................................1

*Blum v. Yaretsky,*
 457 U.S. 991 (1982) ................................................................................................6, 7

*Bousley v. United States,*
 523 U.S. 614 (1998) ..................................................................................................14

*Brady v. United States,*
 397 U.S. 742 (1970) .......................................................................................13, 14, 15

*Bronner v. Duggan,*
 249 F.Supp.3d 27 (D.D.C. 2017) ................................................................................10

*Campbell v. Wood,*
 18 F.3d 662 (9th Cir. 1994) (en banc) .........................................................................16

*Charter Communications, Inc. v. County of Santa Cruz,*
 304 F.3d 927 (9th Cir. 2002).......................................................................................12

*Chicago Teachers Union, Local No. 1 v. Hudson,*
 475 U.S. 292 (1986) ..................................................................................................16

*Cohen v. Cowles Media Co.,*
 501 U.S. 663 (1991) ...........................................................................................*passim*

*College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board,*
 527 U.S. 666 (1999) ....................................................................................................4

*Cook v. Brown,*
  364 F.Supp.3d 1184 (D. Or. 2019)........................................................................3

*Cooley v. California Statewide Law Enforcement Association,*
  No. 2:18-cv-02961-JAM-AC, 2019 WL 331170 (E.D. Cal. Jan. 25, 2019)............2

*Crockett v. NEA-Alaska,*
  367 F.Supp.3d 996 (D. Alaska 2019) ................................................................1, 3

*Curtis Publishing Co. v. Butts,*
  388 U.S. 130 (1967) .........................................................................................4, 15

*D.H. Overmyer Co. Inc. v. Frick Co.,*
  405 U.S. 174 (1972) ...........................................................................................11

*Davies v. Grossmont Union High School District,*
  930 F.2d 1390 (9th Cir. 1991).............................................................................5

*Dingle v. Stevenson,*
  840 F.3d 171 (4th Cir. 2016)..............................................................................14

*Ellis v. Brotherhood of Railway, Airline & Steamship Clerks,*
  466 U.S. 435 (1984) ...........................................................................................18

*Erie Telecommunications, Inc. v. City of Erie,*
  853 F.2d 1084 (3d Cir. 1988).............................................................................5

*Farrell v. IAFF,*
  781 F.Supp. 647 (N.D. Cal. 1992) ......................................................................6

*Felter v. Southern Pacific Co.,*
  359 U.S. 326 (1959) ...........................................................................................20

*Fisk v. Inslee,*
  759 F.App'x 632 (9th Cir. 2019).........................................................................19

*Fuentes v. Shevin,*
  407 U.S. 67 (1972) .......................................................................................8, 9, 11

*Gete v. I.N.S.,*
  121 F.3d 1285 (9th Cir. 1997)............................................................................16

*Grunwald v. San Bernardino City Unified School District,*
  994 F.2d 1370 (9th Cir. 1993)............................................................................17

*Hallinan v. Fraternal Order of Police of Chicago Lodge, No. 7,*
  570 F.3d 811 (7th Cir. 2009)..............................................................................6

*International Association of Machinists District Ten & Local Lodge 873 v. Allen,*
  904 F.3d 490 (7th Cir. 2018)..........................................................................21, 22

*Janus v. AFSCME, Council 31,*
  138 S.Ct. 2448 (2018)................................................................................*passim*

*Johnson v. Zerbst,*
  304 U.S. 458 (1938) ...........................................................................................4

*Joy Silk Mills v. N.L.R.B.*,
    185 F.2d 732 (D.C. Cir. 1950) ......................................................................18

*Keyishian v. Board of Regents*,
    385 U.S. 589 (1967) .....................................................................................16

*Kiddie Rides, Inc. v. Southland Engineering, Inc.*,
    361 F.2d 575 (9th Cir. 1966)........................................................................18

*Kidwell v. Transportation Communications International Union*,
    946 F.2d 283 (4th Cir. 1991)..........................................................................6

*Kirkpatrick v. Chappell*,
    872 F.3d 1047 (9th Cir. 2017).......................................................................14

*Knox v. SEIU, Local 1000*,
    567 U.S. 298 (2012) .......................................................................................4

*Knox v. Westly*,
    No. 2:05-CV-2198-MCE-KJM, 2006 WL 2374763 (E.D. Cal. Aug. 16, 2006).......................8

*Legal Aid Society v. City of New York*,
    114 F.Supp.2d 204 (S.D.N.Y. 2000) ............................................................11

*Leonard v. Clark*,
    12 F.3d 885 (9th Cir. 1993)......................................................................4, 12

*Lugar v. Edmondson Oil Co.*,
    457 U.S. 922 (1982) ....................................................................................5, 7

*Lutz v. International Association of Machinists*,
    121 F.Supp.2d 498 (E.D. Va. 2000) ...............................................................3

*Messman v. Helmke*,
    133 F.3d 1042 (7th Cir. 1998)........................................................................6

*Monroe Lodge No. 770, International Association of Machinists & Aerospace Workers*
    *v. Litton Business Systems, Inc.*,
    334 F.Supp. 310 (W.D. Va. 1971).............................................................19, 20

*N.L.R.B. v. Atlanta Printing Specialties & Paper Products Union 527*,
    523 F.2d 783 (5th Cir. 1975).........................................................................19

*N.L.R.B. v. Penn Cork & Closures, Inc.*,
    376 F.2d 52 (2d Cir. 1967)..................................................... 20, 21, 22, 23

*N.L.R.B. v. U.S. Postal Service*,
    827 F.2d 548 (9th Cir. 1987).........................................................................19

*N.L.R.B. v. U.S. Postal Service*,
    833 F.2d 1195 (6th Cir. 1987).......................................................................19

*N.L.R.B. v. United Steelworkers of America*,
    357 U.S. 357 (1958) .....................................................................................18

*National Abortion Federation v. Center for Medical Progress*,
    685 F.App'x 623 (9th Cir. 2017)....................................................................12

*Ohno v. Yasuma*,
   723 F.3d 984 (9th Cir. 2013)..........................................................5, 7, 8

*Pickering v. Board of Education*,
   391 U.S. 563 (1968) .........................................................................16

*Riley v. National Federation of the Blind of North Carolina, Inc.*,
   487 U.S. 781 (1988) .........................................................................13

*Roberts v. AT&T Mobility LLC*,
   877 F.3d 833 (9th Cir. 2017)..............................................................7

*Sambo's Restaurants, Inc. v. City of Ann Arbor*,
   663 F.2d 686 (6th Cir. 1981)............................................................15

*Schneckloth v. Bustamonte*,
   412 U.S. 218 (1973) .........................................................................11

*SeaPak v. Industrial, Technical & Professional Employees, Division of National
   Maritime Union*,
   300 F.Supp. 1197 (S.D. Ga. 1969), *aff'd*, 423 F.2d 1229 (5th Cir. 1970),
   *aff'd*, 400 U.S. 985 (1971) ..........................................................21, 22

*Smith v. Superior Court, County of Contra Costa*,
   No. 18-cv-05472-VC, 2018 WL 6072806 (N.D. Cal. Nov. 16, 2018)....................2

*United Steelworkers of America v. Sadlowski*,
   457 U.S. 102 (1982) ...........................................................................6

*Walls v. Central Contra Costa Transit Authority*,
   653 F.3d 963 (9th Cir. 2011) (per curiam)........................................11

*Walker v. Pepersack*,
   316 F.2d 119 (4th Cir. 1963).............................................................15

*Youssofi v. Wells Fargo Bank, N.A.*,
   No. 16cv1330-MMA (JMA), 2016 WL 7404522 (S.D. Cal. Dec. 21, 2016)........10

**State Court Cases**

*Bliss v. Southern Pacific Co.*,
   212 Or. 634 (1958) ............................................................................18

*Carlson v. AFSCME*,
   73 Or.App. 755 (1985)........................................................................17

*Conroy v. Rosenblum*,
   358 Or. 807 (2016) ........................................................................6, 8

*Elvin v. Oregon Public Employees Union*,
   313 Or. 165 (1992) ............................................................................16

*In re Marriage of McDonnal*,
   293 Or. 772 (1982) ............................................................................18

*Perricone v. Perricone*,
   292 Conn. 187 (2009) ........................................................................11

*Stines v. Oregon State Employees Association,*
    287 Or. 643 (1979) ...........................................................................................9

**Federal Statutory Authorities**

42 U.S.C. §1983 ...................................................................................... 1, 6, 7

**State Statutory Authorities**

ORS 243.650(18) .............................................................................................17

ORS 243.662 .....................................................................................................5

ORS 292.043 ...................................................................................................12

ORS 292.044 ...................................................................................................12

ORS 292.045 ...................................................................................................12

ORS 292.055(1) .......................................................................................6, 8, 9

ORS 292.055(3) .................................................................................................9

ORS 292.055(5) ...............................................................................................21

**Other Authorities**

*General Teamsters Union Local No. 406,*
    42 N.L.R.B. A.M.R. 25, 2015 WL 1434212 (2015) ................................ 21, 22, 23

*Metalcraft of Mayville, Inc.,*
    367 NLRB No. 116, 2019 WL 1752821 (Apr. 17, 2019) ................................22, 23

*United Steelworkers of America, Local 4671 (National Oil Well, Inc.),*
    302 NLRB 367 (1991) .........................................................................................19

## INTRODUCTION

Plaintiffs each voluntarily chose to join one of the Defendant Unions and to pay dues in exchange for membership rights and benefits.  That those choices were made before the Supreme Court issued *Janus v. AFSCME, Council 31*, 138 S.Ct. 2448 (2018), does not mean that Plaintiffs may now ignore their contractual commitments.  As Plaintiffs concede, there is no First Amendment right to renege on voluntary agreements.  Plaintiffs' Response in Opposition to Defendants' Motions to Dismiss (Dkt. 53) ("Opp.") at 9, 26-27.

Although Plaintiffs nonetheless contend that their affirmative agreements to join and request dues deduction are unenforceable because they were "never validly and constitutionally consented" to, Opp. at 1, Plaintiffs' arguments in support of that contention are contradicted by the facts alleged in the Complaint, are contrary to U.S. Supreme Court precedent, and have been rejected by every court that has considered them.  As the Western District of Washington recently explained in a materially indistinguishable case, the terms of members' own private agreements with their unions do not involve "state action" that implicates the First Amendment, and deduction of dues pursuant to those agreements does not give rise to a 42 U.S.C. §1983 claim.  *See Belgau v. Inslee*, 359 F.Supp.3d 1000, 1012-15 (W.D. Wash. 2019) ("*Belgau II*").

Moreover, *Janus* does not change the analysis because it does not apply: "Janus was not a union member, unlike the Plaintiffs here, and Janus did not agree to dues deduction, unlike the Plaintiffs here. …  The relationship between unions and their voluntary members was not at issue in *Janus*."  *Id.* at 1016-17 (internal quotation marks and citation omitted); *see Babb v. Cal. Teachers Ass'n*, __F.Supp.3d__, No. 8:18-cv-00994-JLS-DFM, 2019 WL 2022222, at *9 (C.D. Cal. May 8, 2019) ("[T]he *Martin* Plaintiffs voluntarily chose to pay membership dues in exchange for certain benefits, and '[t]he fact that plaintiffs would not have opted to pay union membership fees if *Janus* had been the law at the time of their decision does not mean their decision was therefore coerced.'") (quoting *Crockett v. NEA-Alaska*, 367 F.Supp.3d 996, 1008 (D. Alaska 2019)); *Bermudez v. Serv. Emps. Int'l Union, Local 521*, No. 18-cv-04312-VC, 2019 WL 1615414, at *2 (N.D. Cal. Apr. 16, 2019) ("[P]laintiffs' claims for a refund of their

membership dues fail .... [T]he decision to pay dues was not coerced and payment was a valid contractual term."); *Cooley v. Cal. Statewide Law Enforcement Ass'n*, No. 2:18-cv-02961-JAM-AC, 2019 WL 331170, at *3 (E.D. Cal. Jan. 25, 2019) ("Mr. Cooley knowingly agreed to become a dues-paying member of the Union, rather than an agency fee-paying nonmember .... That decision was a freely-made choice.  The notion that Mr. Cooley may have made a different choice ... if he knew the Supreme Court would later invalidate public employee agency fee arrangements does not void his previous, knowing agreement."); *Smith v. Superior Court, Cty. of Contra Costa*, No. 18-cv-05472-VC, 2018 WL 6072806, at *1 (N.D. Cal. Nov. 16, 2018) ("Smith argues his consent to pay wasn't 'knowing' before *Janus* because he couldn't yet have known or understood the rights the case would clarify he had.  But it's not the rights clarified in *Janus* that are relevant to Smith—Smith's First Amendment right to opt out of union membership was clarified in 1977 [in *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977)], and yet he waived that right by affirmatively consenting to be a member of Local 2700.").

Plaintiffs' back-up argument that their contractual agreements to pay dues are not enforceable as a matter of public policy is equally meritless.  Accordingly, Defendants' motions to dismiss should be granted.

## ARGUMENT

## I.    Enforcement of Plaintiffs' Voluntary Dues Authorization Agreements Does Not Violate the First Amendment.

Plaintiffs are wrong that a First Amendment "waiver" analysis is required here and, in any event, their voluntary, affirmative agreements to join the Unions and authorize dues deductions would qualify as such a "waiver" if one were necessary.

A.    **Voluntary union membership agreements are not subject to a heightened "waiver" analysis.**

1.    **Enforcement of a voluntary promise does not trigger a heightened waiver requirement.**

Plaintiffs' central contention is that, even when union membership is voluntary, the enforcement of an agreement to pay union membership dues violates the First Amendment unless the agreement meets the standard for a waiver of First Amendment rights.  Opp. at 3-10. To the contrary, a voluntary union membership agreement is not state action, *see Belgau II*, 359 F.Supp.3d at 1012-15; *Bain v. Cal. Teachers Ass'n*, 156 F.Supp.3d 1142, 1152 & n.10 (C.D. Cal. 2015), and the government's enforcement of such private agreements does not restrain First Amendment rights, because "the First Amendment does not confer ... a constitutional right to disregard promises that would otherwise be enforced under state law."  *Cohen v. Cowles Media Co.*, 501 U.S. 663, 672 (1991); *see* Union Defendants' Motion to Dismiss (Dkt. 24) ("Union MTD") at 13-15.

*Cohen* did not apply a heightened waiver analysis to the newspaper's promise, just the general law of promissory estoppel.  Union MTD at 13-15.  Plaintiffs urge that *Janus* requires a heightened First Amendment waiver whenever a public employee elects to join a union, thus impliedly overruling *Cohen*.  But the only question *Janus* addressed was whether *non*members —people who never voluntarily agreed to join the union and pay dues—can be forced by the state to pay union fees as a condition of public employment.  *See id.* at 15-17.[1]  As other courts have recognized, "*Janus* says nothing about people [who] join a Union, agree to pay dues, and then later change their mind about paying union dues."  *Belgau v. Inslee*, No. 18-5620 RJB, 2018 WL 4931602, at *5 (W.D. Wash. Oct. 11, 2018) ("*Belgau I*"); *see also Crockett*, 367 F.Supp.3d at 1008 (same).

As the Union Defendants have previously explained, Union MTD at 15-16, the paragraph

---

[1] The same is true of *Cook v. Brown*, 364 F.Supp.3d 1184, 1192 (D. Or. 2019), and *Lutz v. International Association of Machinists*, 121 F.Supp.2d 498, 505 (E.D. Va. 2000) (Opp. at 24), which likewise addressed a pre-*Janus* requirement that nonmembers pay fair-share fees.

Plaintiffs quote from *Janus*, Opp. at 4, addresses whether union fees can be collected from "*non*members." 138 S.Ct. at 2486 (emphasis added). In that paragraph, the Supreme Court cited three "waiver" cases, *see id.*, not to tacitly overrule *Cohen*, but to emphasize that States cannot presume that nonmembers wish to support unions. *Cf. Knox v. SEIU, Local 1000*, 567 U.S. 298, 312-13 (2012) (criticizing presumption that "*non*members" who failed to object to non-chargeable component of union dues impliedly consented to payment) (emphasis added). None of those waiver cases involved a plaintiff who affirmatively assumed an obligation, much less who received consideration in return—such as the rights and benefits of union membership that Plaintiffs received here in exchange for their dues.[2] *Janus* does not hold that voluntary, affirmative agreements to pay money to a union are legally different from agreements to pay money to any other organization (or from the promise in *Cohen*).

Nor is there any merit to Plaintiffs' attempt to distinguish *Cohen* as resting on the application of "a law of general applicability." Opp. at 8. It is true that the doctrine of promissory estoppel—the state law under which the confidential source in *Cohen* obtained damages from the newspaper for revealing his identity despite the newspaper's commitment not do to so—was "a law of general applicability" that "d[id] not target or single out the press." 501 U.S. at 670. But the background contract law principles that govern the enforceability of Plaintiffs' voluntary dues authorizations are likewise laws of general applicability.

Plaintiffs' other First Amendment waiver cases are also inapposite because they involved agreements with *government* entities that prospectively restricted the exercise of First Amendment rights—not contracts by one private party to pay money to another. *See Leonard v.*

---

[2] *See* Union MTD at 5-6 (discussing membership rights and benefits Plaintiffs received); *id.* at 19-20 (discussing cases cited in *Janus*); *College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999) (considering whether state "constructively waived" sovereign immunity and suggesting analysis would be different had state made "contractual commitment") (quotation marks omitted); *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 142-45 (1967) (considering whether litigant waived legal arguments by failing to assert them); *Johnson v. Zerbst*, 304 U.S. 458, 464-65 (1938) (considering whether criminal defendant waived right to counsel by failing to request counsel).

*Clark*, 12 F.3d 885, 886, 889-90 (9th Cir. 1993) (union contractually waived First Amendment right in collective bargaining agreement with city); *Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390, 1392-93, 1395 (9th Cir. 1991) (plaintiff waived First Amendment right to run for public office in settlement agreement with school district); *Erie Telecomms., Inc. v. City of Erie*, 853 F.2d 1084, 1094 (3d Cir. 1988) (franchise agreement with city waived private cable operator's right to bring First Amendment claims against city); *infra* at 9 (explaining that the public employer Defendants here are not parties to Plaintiffs' private deduction authorization agreements with the Unions).

While the First Amendment might be implicated if this case involved government *compulsion* to join a union, Plaintiffs do not allege that the State required them to join. To the contrary, Oregon law makes union membership voluntary, ORS 243.662, and Plaintiffs signed membership agreements. The First Amendment simply is not implicated when, as here, an individual voluntarily and affirmatively elects to become a union member and agrees to the terms of membership—just as it is not implicated when an individual voluntarily elects to join (or not join) any other expressive association or, in the case of *Cohen*, when a newspaper voluntarily agrees not to reveal a source's identity. 501 U.S. 665. Thus, just as no waiver analysis is triggered by those voluntary, private actions, no waiver requirement applies here.

### 2.    The public-employer Defendants' role in processing payroll deductions does not change this analysis.

Contrary to Plaintiffs' contention, Opp. at 22-24, the public-employer Defendants' processing of payroll deductions pursuant to Plaintiffs' dues authorizations does not turn Plaintiffs' voluntary union membership agreements into "state action" that triggers a waiver analysis.

To determine whether challenged conduct is state action because it was carried out pursuant to "state power," courts look to the "source of the alleged constitutional harm." *Ohno v. Yasuma*, 723 F.3d 984, 994 (9th Cir. 2013) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). Here, the sources of the alleged constitutional harm—the continued deduction of

dues from Plaintiffs' paychecks—are the private dues authorization agreements that Plaintiffs signed. Plaintiffs do not allege that the State either drafted the agreements or compelled Plaintiffs to sign them. *See Conroy v. Rosenblum*, 358 Or. 807, 811 (2016) (Oregon law "does not set the terms and conditions of union membership, nor does it prescribe or limit the amounts that unions may charge members for representation, collective bargaining, or other union activities."). And Plaintiffs concede in their Complaint that, pursuant to Oregon law, the public-employer Defendants make deductions only from employees who, like Plaintiffs, affirmatively authorize those deductions. *See* Union MTD at 4-6; Complaint (Dkt. 1) ¶¶22-23; ORS 292.055(1) ("Upon receipt of the request in writing of a state officer or employee so to do," public employer shall deduct "the amount of money indicated in such request"). Thus, this case involves private choices. "That the State responds to [the Unions' and individual employees'] actions by" deducting dues pursuant to the terms of their private agreements "does not render [the State] *responsible* for those actions." *Blum v. Yaretsky*, 457 U.S. 991, 1005 (1982) (emphasis in original).[3]

The same state action argument Plaintiffs assert here was rejected in *Belgau II*. That case also involved public employees who signed voluntary membership cards that included a "one-year dues payment commitment" and then sought, under 42 U.S.C. §1983, to challenge the continued deduction of dues from their paychecks. *See* 359 F.Supp.3d at 1006, 1012. The court held that the agreements were not state policy because "Plaintiffs fail[ed] to show that the

---

[3] *See also, e.g.*, *Messman v. Helmke*, 133 F.3d 1042, 1044 (7th Cir. 1998) ("In general, a union is not a state actor. ... Therefore, a union's internal governing rules usually are not subject to First Amendment prohibitions."); *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 817 (7th Cir. 2009) ("union actions taken pursuant to the organization's own internal governing rules and regulations are not state actions"); *United Steelworkers of Am. v. Sadlowski*, 457 U.S. 102, 121 n.16 (1982); *Kidwell v. Transp. Commc'ns Int'l Union*, 946 F.2d 283, 297-99 (4th Cir. 1991); *Farrell v. IAFF*, 781 F.Supp. 647, 649 (N.D. Cal. 1992). As the Fourth Circuit explained, "[w]here the employee has a choice of union membership and the employee chooses to join," neither the employee's membership nor the payment of dues is "coerced" by the state, for "[t]he employee is a union member voluntarily." *Kidwell*, 946 F.2d at 292-93; *cf. Farrell*, 781 F.Supp. at 649-50 (following *Kidwell* and rejecting §1983 claims brought by public sector union members for lack of state action).

contents of the agreements are in any way attributable to the State." *Id.* at 1012. As the court concluded, "[w]hile the Plaintiffs attempt to recast their claim and argue that it is the State deductions that are [at] issue, at the same time, they acknowledge that the deductions are constitutional if the agreements are valid." *Id.* at 1012-13. Plaintiffs make the same concession here. Opp. at 9. "At its core, then, the source of the alleged constitutional harm is the sufficiency of the agreements, not the procedure for their collection that the State agreed to follow. 'The claimed constitutional deprivation cannot be traced to a right, privilege, or rule of conduct imposed by a government entity.'" *Belgau II*, 359 F.Supp.3d at 1013 (quoting *Ohno*, 723 F.3d at 994).

Plaintiffs' alternative argument that their employers' ministerial deduction of dues makes the Unions "joint actors" with the State fares no better. Plaintiffs cannot show that "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Blum*, 457 U.S. at 1004 (citation omitted); *see also Lugar*, 457 U.S. at 939. *Belgau II* concluded that there was no "joint action" when the State processed payroll deductions because the State's role was purely administrative. 359 F.Supp.3d at 1013-14. The reasoning in *Belgau II* is equally applicable to Plaintiffs' claims here.

*Belgau II* is also consistent with Ninth Circuit precedent finding no state action where the government simply enforces an agreement between non-state actors. In *Roberts v. AT&T Mobility LLC*, 877 F.3d 833 (9th Cir. 2017), for example, the Ninth Circuit rejected the plaintiffs' First Amendment challenge to an order compelling arbitration under an adhesive consumer arbitration agreement, because enforcement of that agreement involved no state action sufficient to support a §1983 claim. The court reasoned that "the 'challenged action' is the requirement that Plaintiffs actually arbitrate their lawsuit," yet "private parties draft adhesive consumer arbitration clauses, not governments." *Roberts*, 877 F.3d at 844 (quotation marks and brackets omitted). The Ninth Circuit held that "[b]ecause no federal law required Plaintiffs to waive their right to litigate, there is no state action simply because the state enforces that private

agreement." *Id.* (quotation marks and brackets omitted). *See also Ohno*, 723 F.3d at 997 (court's enforcement of Japanese judgment under California Uniform Foreign-Country Money Judgments Recognition Act did not make the terms of that foreign judgment "state action" that could violate the First Amendment).

The situation here is no different. No state law required Plaintiffs to agree to their deduction authorizations. Oregon law provides that "[u]pon receipt of the request in writing of a state officer or employee so to do," a public employer will "deduct from the salary or wages of such officer or employee the amount of money indicated in such request …." ORS 292.055(1). The public-employer Defendants thus simply comply with Plaintiffs' own written dues deduction authorizations, and the employers retain no decision-making or discretionary function. *See Conroy*, 358 Or. at 811 (Oregon law does not set terms of union membership); *see also Bain v. Cal. Teachers Ass'n*, No. 2:15-cv-02465-SVW-AJW, 2016 WL 6804921, at *7 (C.D. Cal. May 2, 2016) (State's "ministerial obligation to deduct dues" authorized pursuant to plaintiffs' dues authorization agreements "does not transform" union's membership policies "into state actions"), *appeal dismissed as moot*, 891 F.3d 1206 (9th Cir. 2018); *Knox v. Westly*, No. 2:05-CV-2198-MCE-KJM, 2006 WL 2374763, at *4 (E.D. Cal. Aug. 16, 2006) (no state action when union unilaterally increased dues, even though State implemented change through payroll deduction). The State's ministerial response to the Unions' and Plaintiffs' private dues authorization agreements does not turn the terms of those agreements into state action. *See Ohno*, 723 F.3d at 997 ("The court's mandatory indifference to the underlying merits of the judgment Ohno is seeking to enforce refutes any characterization ... of Ohno's enforcement effort as a joint action.").

Plaintiffs rely on *Fuentes v. Shevin*, 407 U.S. 67, 96 (1972) (Opp. at 8-12), but in that case the state statute itself did not comport with procedural due process. Here, the relevant statute is entirely consistent with the First Amendment. It provides for public employers to deduct dues only pursuant to employees' voluntary, affirmative authorizations, ORS 292.055(1) (authorizing dues deductions only "[u]pon receipt of the request in writing of a state officer or

employee so to do"), just as the state promissory estoppel law in *Cohen* provided for the enforcement of voluntarily assumed obligations.  501 U.S. at 670-71.  The discussion in *Fuentes* of whether an ancillary, "fine print" term in a consumer contract to purchase furniture was sufficiently "clear" to waive the right to object to the procedural due process violation caused by the state replevin statute is thus entirely irrelevant here, where there is nothing unconstitutional about the state law.  407 U.S. at 95.[4]

Nor is there any basis for Plaintiffs' assertion that enforcement of dues authorization agreements qualifies as joint action because "the public employer Defendants are parties to the dues deduction authorizations."  Opp. at 22-23.  The agreements are contracts between the respective Unions and their members exchanging membership benefits for the payment of dues. *See* Complaint ¶¶65, 67 & nn.10, 12; Lynch Decl. (Dkt. 25) Exs. A, B; *see also Stines*, 287 Or. at 651 (one-year dues deduction authorization signed by employee was "her contract with the union").  That the agreements authorize the Plaintiffs' employer to make dues deductions does not make the employer a party, any more than courts are parties to contracts they enforce.[5]

---

[4] Plaintiffs' challenge to ORS 292.055(3) is misplaced.  That statute is not relevant here.  It provides that a public employer will stop deductions upon receipt of an employee's written request "[u]nless there is a contract to the contrary."  ORS 292.055(3).  The Oregon Supreme Court has held that, "in the context in which ORS 292.055 is found," the statute is referring to a "contract between a union and the employer."  *Stines v. Or. State Emps. Ass'n*, 287 Or. 643, 650-52 & n.1 (1979).  The deductions in this case are not made pursuant to such a "maintenance-of-membership" collective bargaining provision.  The Complaint concedes that all Plaintiffs' requests to resign from union membership were processed.  Complaint ¶¶33, 36, 39, 43, 46, 50, 53, 56, 60, 63.  Rather, the deductions that Plaintiffs challenge are made based on their own affirmative private agreements with the Unions, pursuant to basic state contract law and ORS 292.055(1), which provides that "[u]pon receipt of the request in writing of a state officer or employee so to do," a public employer "shall deduct from the salary or wages of such officer or employee the amount of money indicated in such request."  *See Stines*, 287 Or. at 651 (describing one-year dues deduction authorization signed by employee as "her contract with the union," under which she "could cancel her dues at the end of her first year as an employe[e]," and contrasting that contract between the employee and her union with a collective bargaining agreement between the union and the employer that could be "to the contrary" pursuant to ORS 292.055(3)).

[5] The Complaint includes no allegations that the public-employer Defendants played any role in drafting the agreements or soliciting the Plaintiffs to sign them.  All that Plaintiffs allege is that their employers make deductions from "authorizing public employees."  Complaint ¶¶22-23.

### 3. Plaintiffs' state action theory would cause numerous private agreements to be subject to First Amendment waiver analysis.

Accepting Plaintiffs' state action theory would require a revolution in contract law. Countless private agreements touch upon First Amendment rights. The courts would have to reconsider the enforcement of commonplace nondisclosure agreements, *see, e.g.*, *Bronner v. Duggan*, 249 F.Supp.3d 27, 41 (D.D.C. 2017) ("[W]hen a court merely enforces obligations explicitly assumed by the parties, there is no state action. *See Cohen*, 501 U.S. at 669-70. To hold otherwise would mean that courts could never enforce non-disclosure agreements."), and private arbitration agreements, which implicate parties' First Amendment right to petition the government, *see, e.g.*, *Youssofi v. Wells Fargo Bank, N.A.*, No. 16cv1330-MMA (JMA), 2016 WL 7404522, at *1-2 (S.D. Cal. Dec. 21, 2016) (rejecting argument that plaintiff did not knowingly waive First Amendment rights by signing arbitration agreement, because agreement expressly required arbitration). Even an agreement to purchase an annual magazine subscription would not be enforceable absent a knowing, voluntary, and intelligent "waiver" of the reader's constitutional right not to pay money to support expressive activity with which she disagrees. The same test would apply to college endowment pledges or to an agreement to provide annual support to a PBS station in exchange for promotional merchandise. That absurd result, however, has no basis in law.

### B. Even if a "waiver" analysis were required, Plaintiffs' voluntary union membership agreements would constitute waivers.

The Union Defendants have already demonstrated that, even if a constitutional waiver analysis were necessary here (it is not), Plaintiffs' claims would still fail because they entered into voluntary, affirmative, written dues authorization agreements that clearly and unambiguously authorize their employers to deduct the dues at issue, thereby waiving any right not to pay those dues. Union MTD at 22-27. Plaintiffs' arguments to the contrary are meritless.

### 1. Voluntary contracts to pay money to a union do not require magic words referencing the First Amendment.

A written union membership agreement that clearly authorizes dues deductions (as

Plaintiffs' agreements did here) is the gold standard for clear-and-affirmative consent to pay union dues.  Unlike in *Fuentes*, the obligation to pay dues here was not an ancillary, "fine print" term that was not "clear" in its meaning, but was set forth explicitly as the very purpose of the agreement.  407 U.S. at 95.  In *Janus*, the Supreme Court stated that the government could require *nonmembers* to pay union fees if they "clearly and affirmatively consent before any money is taken from them."  138 S.Ct. at 2486.  Although *Janus* did not address the relationship between unions and their *members* (*see supra* at 1-2; Union MTD at 15, 19), clearly and affirmatively consenting to pay is precisely what Plaintiffs did here.  Union MTD at 14-15.[6]

There is no support for Plaintiffs' claim that voluntary agreements to pay union dues do not qualify as a waiver of First Amendment rights unless they also expressly inform workers that they have a First Amendment right not to pay those dues.  Opp. at 10-12.  Even "assum[ing] ... an agreement between private parties to restrict speech implicates the first amendment," a voluntary "agreement [that] clearly sets forth the restrictions" is enforceable without the need for "the talismanic recital of the words 'first amendment.'"  *Perricone v. Perricone*, 292 Conn. 187, 210, 210 n.22 (2009).[7]  The newspaper's promise in *Cohen* was enforceable notwithstanding the

---

[6] *Walls v. Central Contra Costa Transit Authority*, 653 F.3d 963, 969 (9th Cir. 2011) (per curiam), and *Legal Aid Society v. City of New York*, 114 F.Supp.2d 204, 227 (S.D.N.Y. 2000) (Opp. at 16), are inapposite because the agreements in those cases did not clearly give up the plaintiff's rights (to a pre-termination hearing in *Walls*, or to challenge the transfer of business to other service providers in *Legal Aid Society*).  The dues authorization agreements here, by contrast, were explicit and unambiguous in authorizing the dues deductions.  Union MTD at 12-13.  Plaintiffs urge that the meaning of the simple, one-page agreements they signed "could easily be lost on a casual reader or the reader who depended on the verbal representations of a union representative," and that it cannot be "assumed that each Plaintiff signed a form that was as textually clear as the forms printed from Union Defendants['] websites."  Opp. at 11 n.5.  The Complaint makes no allegations, however, that any Plaintiff relied on any "verbal representations" of any union representative, or that the Plaintiffs' agreements were illegible.

[7] *Cf. Schneckloth v. Bustamonte*, 412 U.S. 218, 229-33 (1973) (voluntary consent to a search waives Fourth Amendment rights regardless of whether the individual was advised of his right to refuse, or even knew of that right, before giving consent); *D.H. Overmyer Co. Inc. v. Frick Co*., 405 U.S. 174, 180-81, 185-86 (1972) (even if waiver standard applied to contract including cognovit clause, waiver standard was satisfied despite fact that contract did not mention the "Fourteenth Amendment" or right to "due process").

absence of any special First Amendment disclaimers. The Ninth Circuit has repeatedly held that even contracts with the government (which Plaintiffs' dues authorization agreements are not) were valid waivers of constitutional rights notwithstanding the absence of such disclaimers. *See*, *e.g.*, *Charter Commc'ns, Inc. v. Cty. of Santa Cruz*, 304 F.3d 927, 930-31, 935 (9th Cir. 2002) (plaintiff "voluntarily entered into an agreement under which the County had to approve any transfer of the franchise," and "thus, to that extent, waived its right to claim that a denial of a transfer violated its First Amendment rights"); *Leonard*, 12 F.3d at 886 (collective bargaining agreement with government waived union's First Amendment rights). And private non-disclosure agreements are enforceable when they are voluntary and clearly impose the restriction, notwithstanding the absence of any reference to the First Amendment, even when the information is of public concern, and even when enforced by an injunction that would otherwise be an unconstitutional prior restraint. *See*, *e.g.*, *Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, 685 F.App'x 623, 626 (9th Cir. 2017) (plaintiffs "waived any First Amendment rights to disclose that information publicly by knowingly signing the agreements" (citing *Leonard*, 12 F.3d at 889)), *cert. denied*, 138 S.Ct. 1438 (2018). An agreement to pay annual dues is certainly not of any greater constitutional moment.

The dues authorizations here are indistinguishable from the one-year dues authorizations signed by millions of other public employees, all of which would be invalid under Plaintiffs' theory. *See, e.g.*, Reply Declaration of Amanda C. Lynch, submitted herewith, Ex. A (federal employee dues authorization form). Plaintiffs' theory would invalidate millions of authorizations for charitable deductions as well. *See, e.g.*, *id.* Ex. B (form for public employees to donate to Oregon Food Bank Network via payroll deduction); ORS 292.043 (authorizing public employers to allow public employees to donate to charitable foundations via payroll deduction); *id.* 292.044 (same for charitable donations to nonprofit organizations via payroll deductions); *id.* 292.045 (same for payroll deductions for annual charitable fund drive). Further, Plaintiffs' theory would require special First Amendment disclaimers in the membership agreements of every organization that engages in any expressive activity. No case law supports

such an absurd result, and indeed, imposition of such a requirement would restrain the organizations' own First Amendment rights. *See, e.g.*, *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 795-801 (1988) (First Amendment violated by law requiring charities to tell potential donors percentage of charitable contributions made); Union MTD at 24.

In sum, even assuming Plaintiffs could show that a First Amendment waiver were required, which they cannot for the reasons previously explained, *see supra* at 2-10, Plaintiffs' dues authorization agreements would constitute clear and affirmative consent to pay union dues.

> **2.      Plaintiffs' argument that their affirmative written agreements to join the Unions and pay dues could not be "voluntary" or "knowing" because they were signed before *Janus* is foreclosed by Supreme Court precedent.**

Plaintiffs further contend that their affirmative agreements to join the Unions and pay union dues were not "voluntary" or "knowing" solely because they were signed at a time when non-members paid fair-share fees. Opp. at 13-18. But that contention is foreclosed by U.S. Supreme Court precedent.

The Union Defendants have already explained that Plaintiffs' argument that their deduction authorizations were not "knowing" cannot be squared with *Brady v. United States*, 397 U.S. 742 (1970). *See* Union MTD at 24-27. Plaintiffs' related argument that their authorizations were not "voluntary" is similarly foreclosed by *Brady*. *See* 397 U.S. at 748 ("Waivers of constitutional rights not only must be *voluntary* but must be *knowing, intelligent acts* done with sufficient awareness of the relevant circumstances and likely consequences. *On neither score was Brady's plea of guilty invalid*.") (emphases added and footnote omitted). The defendant in *Brady* was presented with a choice: agree to a plea bargain and forgo the right to a trial by jury, or exercise that right and face a death penalty statute that the Supreme Court later held to be unconstitutional. Brady argued that he did not voluntarily waive his right to a jury because he would not have agreed to the plea bargain if not for the unconstitutional penalty statute. The Court rejected that argument, concluding that, even "assum[ing] that Brady would not have pleaded guilty except for the death penalty provision," his plea nevertheless was "voluntary"

because he understood what he was agreeing to.  *Id.* at 750, 755.  The same is true of Plaintiffs here—their membership and deduction authorization agreements make clear on their face that Plaintiffs were agreeing to the deductions they now challenge.  Union MTD at 4-5, 12-13.

The Court in *Brady* further held that "a voluntary plea of guilty intelligently made *in the light of the then applicable law* does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise" about the alternative to accepting the plea agreement.  397 U.S. at 757 (emphasis added).  *Brady* thus squarely precludes Plaintiffs' contention that public employees could not have "voluntarily" or "knowingly" chosen union membership, in the sense relevant to a waiver of First Amendment rights, because the applicable law at the time permitted fair-share fees.  *See also Dingle v. Stevenson*, 840 F.3d 171, 175 (4th Cir. 2016) ("Although [a subsequent Supreme Court opinion], in hindsight, altered the calculus underlying Dingle's decision to accept a plea agreement, it does not undermine the voluntariness of his plea.").[8]

Plaintiffs argue that *Brady* is distinguishable because "[t]he court in *Brady* specifically found that the party had waived his right to a trial by jury."  Opp. at 17.  But that is the point— even if a constitutional "waiver" analysis were appropriate here (it is not), Plaintiffs "waived" any right not to pay money to the Unions by voluntarily and affirmatively joining one of the

---

[8] Plaintiffs cite *Bousley v. United States*, 523 U.S. 614 (1998) (Opp. at 17-18), but there the petitioner agreed to plead guilty to a particular offense after being misinformed of the essential elements of the crime.  He argued that his plea was not knowing or intelligent because "neither he, nor his counsel, nor the court correctly understood the essential elements of the crime with which he was charged."  *Id.* at 618.  Similarly, in *Kirkpatrick v. Chappell*, 872 F.3d 1047, 1058 (9th Cir. 2017) (Opp. at 6, 15), there was substantial evidence that the pro se habeas plaintiff "did not understand the legal implications of the waiver" of his right to pursue his habeas petition, erroneously believing that his waiver would allow him to take over pursuit of his claims pro se rather than abandoning his claims altogether.  Here, by contrast, the Complaint makes clear that Plaintiffs knew precisely what they were agreeing to when they signed their membership and deduction authorization agreements, because the agreements on their face authorize the very deductions Plaintiffs now challenge.  Union MTD at 4-6, 12-13.

Unions and agreeing to pay that money.  Plaintiffs' argument as to why their agreements were not "voluntary" or "knowing" is the same argument the Supreme Court rejected in *Brady*.[9]

Plaintiffs rely on *Ancheta v. Watada*, 135 F.Supp.2d 1114 (D. Haw. 2001) (Opp. at 13-14), but, assuming that case is correctly decided, it is easily distinguishable.  In *Ancheta*, a political candidate was censured by Hawaii's Campaign Spending Commission because the Commission concluded that a political flier criticizing the candidate's opponent violated rules in Hawaii's Code of Fair Campaign Practices prohibiting campaign material that "misrepresents, distorts, or otherwise falsifies the facts regarding [a] candidate" or that uses "personal vilification, character defamation, or any other form of scurrilous personal attacks on any candidate." *Id.* at 1117.  State law required every candidate either to sign onto and abide by the Code or have his failure to sign the Code publicized. *Id.* at 1116.  The court concluded that the Code "regulate[d] speech on the basis of its content" without being narrowly drawn and necessary to serve a compelling state interest, and thus violated the First Amendment. *Id.* at 1121-24.  The defendant argued that the plaintiff had waived his First Amendment right by signing onto the Code.  But the court reasoned that signing onto the Code did not constitute an effective waiver of First Amendment rights because

> [t]he artifice used by the State to regulate speech effectively places candidates for public office in the position of choosing between Scylla and Charybdis.  A candidate must either curb his protected rights of expression by signing and adhering to the Code of Fair Campaign Practices or engage in such protected activity and *be branded by the State as a candidate who will not "uphold basic*

---

[9] Plaintiffs cite *Curtis Publishing Co.*, 388 U.S. 130, *Walker v. Pepersack*, 316 F.2d 119 (4th Cir. 1963), and *Sambo's Restaurants, Inc. v. City of Ann Arbor*, 663 F.2d 686 (6th Cir. 1981) (Opp. at 16), but those cases do not help them.  In *Curtis Publishing Co.* and *Walker*, courts concluded that a party had not waived a constitutional right through *inaction* by failing to raise an argument at a previous stage of litigation when that argument was meritless under then-applicable law but that law was later overturned.  In *Sambo's Restaurants*, the court held that a company's unilateral stipulation not to use a particular name was unsupported by consideration and thus was not binding.  663 F.2d at 690-92.  None of these cases says anything about the enforceability of an affirmative agreement in exchange for consideration, *see* Union MTD at 19-20, and the Supreme Court's decision in *Brady* precludes Plaintiffs' arguments here.

> *principles of decency, honesty and fair play."* The State cannot constitutionally
> force its candidates for public office to choose between alternative perils.

*Id.* at 1125-26 (emphasis added).

Ancheta thus reasoned that the State may not regulate the content of speech by coercing political candidates to comply with content-based restrictions or face the penalty of public condemnation by the State. *See id.* at 1126. The cases *Ancheta* cited in support of its holding reinforce the point that the State may not coerce individuals into giving up their constitutional rights by punishing those who refuse to do so. *See, e.g.*, *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568 (1968) (state may not condition public employment as school teacher on waiver of First Amendment rights to speak on matters of public concern); *Keyishian v. Bd. of Regents*, 385 U.S. 589, 605-06 (1967); *see also Campbell v. Wood*, 18 F.3d 662, 680 (9th Cir. 1994) (en banc) (rejecting argument that defendant's ability to choose to be executed by lethal injection made his Eighth Amendment challenge to execution by hanging nonjusticiable, reasoning that "the government may [not] cloak unconstitutional punishments in the mantle of 'choice'"); *cf. Gete v. I.N.S.*, 121 F.3d 1285, 1293-94 (9th Cir. 1997) (election of administrative rather than judicial forfeiture proceedings did not waive right to challenge constitutionality of proceeding).

There was no similar regulation by "artifice" or threat of punishment here. To the contrary, Plaintiffs were free to choose either to affirmatively agree to become Union members and pay dues in exchange for member rights and benefits, or not to join the Union and pay fair-share fees that covered the cost of collective bargaining representation that they each received.[10]

---

[10] Plaintiffs argue that the fair-share fees nonmembers paid when they each affirmatively agreed to become union members and pay dues were, in some circumstances, equal to union member dues. Opp. at 13. Plaintiffs do not dispute, however, that under established precedent of both the United States and Oregon Supreme Courts before *Janus*, Defendants were required to follow specific procedures to ensure that nonmembers could object to paying for non-chargeable expenses. *See Chicago Teachers Union, Local No. 1 v. Hudson,* 475 U.S. 292 (1986); *Elvin v. Or. Pub. Emps. Union*, 313 Or. 165 (1992). Plaintiffs make no allegation that Defendants did not comply with these procedures. Under Ninth Circuit precedent, unions could use a "deduction-escrow-refund" procedure, by which the employer deducted a fair-share fee equivalent to full union dues and the union provided objecting nonmembers an "advance rebate" of the portion attributable to non-chargeable expenses, with the result being that nonmembers

Plaintiffs' argument that they faced the threat of termination if they did not agree to join the Unions and affirmatively authorize dues deductions, Opp. at 13-14, is wrong as a matter of law and fact. The collective bargaining agreements incorporated by reference into the Complaint provided that nonmembers automatically paid fair-share fees; they were not terminated from employment.[11] And the fair-share fee was not a "penalty" or "punishment" for choosing not to join the Union—it was a payment made by nonmembers to pay for the costs of collective bargaining representation they received from the Union. *See* Union MTD at 25 n.7; ORS 243.650(18) (fair-share fee is an "assessment to defray the cost for services by the exclusive representative in negotiations and contract administration of all persons in an appropriate bargaining unit who are not members of the organization serving as exclusive representative of the employees"); *Carlson v. AFSCME*, 73 Or.App. 755, 759 (1985) (explaining that fair-share fees "paid by the nonmember employees represent their aliquot share of the costs of negotiating and administering the collective bargaining agreement. The non-members are, at bottom, paying

---

could choose to pay less than the amount of full union dues. *See, e.g.*, *Grunwald v. San Bernardino City Unified Sch. Dist.*, 994 F.2d 1370, 1372-77 (9th Cir. 1993). In any event, Plaintiffs do not dispute that they could have chosen not to affirmatively agree to become union members and to pay union dues for one year (in exchange for access to the union member rights and benefits they received); that is sufficient to show that their agreements to pay full membership dues for a one-year period were the result of voluntary choices.

[11] *See* Complaint ¶¶24-31 nn.1-9; Declaration of Rebekah Millard (Dkt. 54) Exs. A §8 ("Each employee ... shall, within thirty (30) days of hire, have deducted monthly from their pay by the State, a sum ...."), B §8 (same), C §7 ("[T]he Department will deduct from the wages of each bargaining unit employee who is not a Union member the payments in lieu of dues required by this Article."), D §16(a) ("All employees in the bargaining unit who are not members of the Union shall make fair share payments in lieu of dues to the Union."), E §14(A) ("All employees in the bargaining unit who are not members of the Union shall make fair share payments in-lieu-of-dues to the Union."), F §3.3 ("Payment in lieu of dues ... shall be deducted from the employee's wages ...."), G Art. 3, §2(B) (county "shall deduct from the paycheck ... of all employees ... the specified amount for the payment of [union] membership or payment in lieu of dues ...."), H Art. 4, §1 ("Bargaining unit members who are not members of the Union shall … make payment in-lieu-of-dues to the Union."), I §2.2 ("Fair Share payments authorized by this Article shall be deducted by the City."), J §3.3 ("The Agency agrees to deduct ... in the case of non-members, a monthly 'in-lieu-of-dues payment'"), K Art. 3, §3 ("Fair share payments shall be deducted from the wages of nonmember employees ....").

for a service.") (citation and footnote omitted); *Ellis v. Bhd. of Ry., Airline & S.S. Clerks*, 466

U.S. 435, 445 & n.8 (1984) (expressly distinguishing between agency fees and "penalties").[12]

## II.   One-Year Dues Authorization Agreements Do Not Violate Public Policy.

### A.   Public policy favors the enforcement of contracts.

Plaintiffs separately argue that the enforcement of their dues authorization agreements

would violate public policy, even if doing so does not violate the First Amendment.  Opp. at 18-

21.  It is not clear whether this public policy argument is based on federal or state law.  In any

event, there is no public policy that would be undermined by the enforcement of Plaintiffs'

voluntary membership agreements.  *Cohen* squarely holds that "the First Amendment does not

confer … a constitutional right to disregard promises that would otherwise be enforced under

state law."  501 U.S. at 672.  Moreover, permitting Plaintiffs to renege would contravene the

public's strong interest in enforcing valid contracts to which the parties have voluntarily agreed.

*See, e.g.*, *Kiddie Rides, Inc. v. Southland Eng'g, Inc.*, 361 F.2d 575, 578 (9th Cir. 1966) ("It is

essential to society's commercial welfare that there be no undermining of the desirable stability

of contracts.  When their terms are reasonably explicit and plain … courts should enforce

them.").  Oregon law also recognizes that public policy favors the enforcement of contracts.  *See*,

*e.g.*, *In re Marriage of McDonnal*, 293 Or. 772, 779 (1982); *Bliss v. S. Pac. Co.*, 212 Or. 634,

646 (1958).

Plaintiffs provide no relevant authority to the contrary.  Instead, they contend that

agreements between individuals and their union are unique and therefore subject to a different

standard from all other private agreements.  Specifically, they assert that "window-period

restrictions" limiting when employees can stop dues deductions have "sometimes" been held

unenforceable.  Opp. at 19.  To the contrary, courts routinely find one-year dues deduction

---

[12] Plaintiffs cite *N.L.R.B. v. United Steelworkers of America*, 357 U.S. 357, 360 (1958)
(discussing employer's "threats that the mill would close down or that various employee benefits
would be lost if the mill should become organized"), and *Joy Silk Mills v. N.L.R.B.*, 185 F.2d
732, 739 (D.C. Cir. 1950) (discussing employer's promises of favorable new rest periods and
shift rotations if employees did not join union).  *See* Opp. at 14.  This case involves no similar
employer coercion intended to force employees to choose (or not choose) union membership.

authorization agreements like those at issue here to be enforceable contracts. *See, e.g.*, *N.L.R.B.*
*v. U.S. Postal Serv.*, 827 F.2d 548, 553-54 (9th Cir. 1987); *N.L.R.B. v. U.S. Postal Serv.*, 833
F.2d 1195, 1196 (6th Cir. 1987); *United Steelworkers of Am., Local 4671 (Nat'l Oil Well, Inc.)*,
302 NLRB 367, 368 (1991); Union MTD at 9-12. Indeed, the Ninth Circuit recently held that a
"dues irrevocability provision" in a union membership agreement that allows revocation of
deduction authorization only within a 15-day "window" period each year is enforceable and
"deduction of union dues in accordance with the membership cards' dues irrevocability provision
does not violate Appellants' First Amendment rights." *Fisk v. Inslee*, 759 F.App'x 632, 633 (9th
Cir. 2019). The Court explained that "temporarily irrevocable payment authorizations are
common and enforceable in many consumer contracts—e.g., gym memberships or cell phone
contracts" and concluded that "those provisions should be similarly enforceable here." *Id.* at
634.

      In the cases Plaintiffs cite, Opp. at 19, courts similarly enforced provisions making dues
deduction authorization irrevocable for a period of time and never suggested that a voluntary
agreement to revoke dues authorization within a specified window contravenes public policy.
*See N.L.R.B. v. Atlanta Printing Specialties & Paper Prods. Union 527*, 523 F.2d 783, 784-85
(5th Cir. 1975) (holding it was an unfair labor practice not to honor revocations submitted within
15 days prior to expiration of old collective bargaining agreement, when applicable statute and
dues authorization forms both expressly permitted revocation during that period); *Monroe Lodge*
*No. 770, Int'l Ass'n of Machinists & Aerospace Workers v. Litton Bus. Sys., Inc.*, 334 F.Supp.
310, 315-16 (W.D. Va. 1971) (concluding that employer breached collective bargaining
agreement by stopping dues deductions for members who sought to revoke their dues checkoff
authorizations before the year they authorized had elapsed; explaining, "[u]nder basic contract
principles the effect of the renewal provision in the authorization cards, which were voluntarily

executed by employees who had chosen to pay their dues in this manner, is to bind the employee to an obligation of one year's union dues").[13]

### B.    Plaintiffs' federal labor law cases are not on point here.

The other federal labor law cases Plaintiffs rely upon applied federal statutes—not the First Amendment or generalized notions of "public policy"—and, in any event, those cases cast no doubt on the enforceability of the agreements here.

*Felter v. Southern Pacific Co.*, 359 U.S. 326 (1959) (Opp. at 19-20), held that a union's failure to honor timely, written revocation requests *unless they were submitted on a specific form* violated the Railway Labor Act's requirement that checkoff agreements "shall be revocable in writing after the expiration of one year." *Id.* at 327-29, 333-34, 337-38.  Plaintiffs here have not alleged the Unions require revocation requests to be submitted on a specific form.

Likewise, *N.L.R.B. v. Penn Cork & Closures, Inc.*, 376 F.2d 52 (2d Cir. 1967) (Opp. at 20-21), involved a very different factual scenario.  Under the "union shop" arrangement in that case, *membership* in the union was a condition of employment.  Upon notice from the union that an individual employee was not a member of the union in good standing, the employer was contractually obligated to discharge the employee within three days.  *See Penn Cork*, 376 F.2d at 54.  As Judge Friendly explained, given the fact that employees faced termination if they fell behind on making their union-dues payments, it was logical to infer that employees' decision to join the union and authorize dues deductions was influenced by the union security clause requiring them all to be union *members* in good standing, "for fear that without it [an employee] may forget to make the payments and risk dismissal for failure to pay union dues." *Id.* at 55.

---

[13] The court in *Monroe Lodge No. 770* also held that "revocations which were submitted during the year gave the Company and the Union notice of the employees' desire to discontinue the deductions, and it was unnecessary for the employees to resubmit revocations during the fifteen day period at the end of the second year."  334 F.Supp. at 317.  Plaintiffs' Complaint here concedes that each Plaintiff was informed by the relevant Union that the Plaintiff's revocation request will be processed, and deductions will cease, at the beginning of the applicable window period, without the need for the Plaintiff to re-submit any further request.  *See* Complaint ¶¶33, 36, 39, 43, 46, 50, 53, 56, 60, 63; Union MTD at 6.

Thus, the National Labor Relations Act ("NLRA") permitted them to revoke their authorizations after employees themselves voted to rescind the union security obligation.  *Id.* at 54, 56.

Here, by contrast, the "agency shop" arrangement in effect when Plaintiffs chose to become union members was starkly different.  Plaintiffs were not required (as in *Penn Cork*) to become union members, but rather were obligated only to pay a fair-share fee if they did not voluntarily choose to join the union.  That fee was automatically deducted from nonmembers' paychecks, without any individual authorization.  ORS 292.055(5); Millard Decl. (Dkt. 54) Exs. A-K; *supra* note 11.  Unlike in *Penn Cork*, Plaintiffs' decisions to become union *members*—and in doing so to accept the terms of their membership agreements with regard to termination of payroll deductions—were entirely voluntary.  *See Int'l Ass'n of Machinists Dist. Ten & Local Lodge 873 v. Allen*, 904 F.3d 490, 506 (7th Cir. 2018) ("'Checkoff authorizations irrevocable for one year after [their effective] date do not amount to compulsory unionism as to employees who wish to withdraw from membership prior to that time.'") (quoting *SeaPak v. Indus., Tech. & Prof'l Emps., Div. of Nat'l Mar. Union*, 300 F.Supp. 1197, 1201 (S.D. Ga. 1969), *aff'd*, 423 F.2d 1229 (5th Cir. 1970), *aff'd*, 400 U.S. 985 (1971); bracketed alteration in *Allen*).

That is, indeed, precisely the conclusion reached by the NLRB's Division of Advice just a few years ago, in considering a case analogous to this one.  In *General Teamsters Union Local No. 406*, 42 N.L.R.B. A.M.R. 25, 2015 WL 1434212 (2015), an employee resigned her union membership and sought to terminate her dues deduction authorization following Michigan's enactment of a "right-to-work" law prohibiting compulsory fair-share fees.  The Division of Advice concluded that the union could enforce the window period for dues deduction revocations to which the plaintiff had agreed.  The Division of Advice explicitly distinguished *Penn Cork*, where it had been "appropriate to infer that employees had signed checkoff authorizations in order to satisfy the union-security obligation [i.e., the obligation to remain union *members* in good standing] imposed on them by the applicable contact."  *Id.*  In *General Teamsters*, however, the employee had been required only to pay a fair-share fee (as were Plaintiffs here), and she therefore "voluntarily chose to become a Union member when she

completed her dues checkoff authorization." *Id.* Because she "did not execute her dues checkoff authorization solely because there was a union-security requirement in place, … it makes no difference that the new right-to-work law eliminated the [agency fee] obligation." *Id.* That being the case, "the Union did not violate Section 8(b)(1)(A) [of the NLRA] by refusing to honor her request. The [employee] must wait for the next window period to properly revoke her checkoff authorization." *Id.*

Plaintiffs' supplemental authority, *Metalcraft of Mayville, Inc.*, 367 NLRB No. 116, 2019 WL 1752821 (Apr. 17, 2019) (Dkt. 61), does not help them. In that case, the National Labor Relations Board ("Board") held that an employer did not violate the NLRA by ceasing dues deductions after the enactment of Wisconsin's "right-to-work law," because the employer "reasonably believed" that its employees' dues-checkoff authorizations did not conform to Wisconsin's new law. *Id.* at *1. Wisconsin's new law expressly prohibited dues-checkoff authorizations unless they are revocable by the employee upon 30 days' notice. *Id.* at *2. The Board concluded that the employer had an "arguable basis" for its belief that the dues-checkoff authorizations the employees had signed did not "conform[] to applicable law," because the authorizations were not revocable upon 30 days' notice as required by the new law. *Id.* at *5-6.[14]

The Board also stated that the employer could "reasonably … interpret[]" *Penn Cork* "to require cessation of dues checkoff when a union-security agreement is invalidated," *id.* at *5, but the Board did not hold that such a reading of *Penn Cork* is correct. The Board took pains to explain that it was not holding the employer's interpretation "to be correct, merely reasonable." *Id.* at *6 n.6. And the Board acknowledged that cases addressing the argument that state right-to-work laws invalidate dues-checkoff authorizations treat that argument as "reasonable" but "ultimately *unsuccessful*." *Id.* (citing *SeaPak*, 300 F.Supp. at 1199, *aff'd*, 423 F.2d 1229 (5th

---

[14] Before the Board rendered its decision, the Seventh Circuit held that the 30-day revocation provision of Wisconsin law is preempted by federal labor law. *See Int'l Ass'n of Machinists Dist. Ten*, 904 F.3d at 492-493. The Board in *Metalcraft* held that the employer had an "arguable basis" for its belief that it was authorized to stop dues deductions on the basis of the Wisconsin law even though that law was later held to be preempted. *See* 2019 WL 1752821, at *6.

Cir. 1970), *aff'd*, 400 U.S. 985 (1971)) (emphasis added).  Nor did the Board suggest any disagreement with the interpretation of *Penn Cork* set forth in *General Teamsters*.

Of course, *Penn Cork*, *General Teamsters*, and *Metalcraft* involved the application of the NLRA, not the First Amendment or "public policy."  In any event, *Penn Cork* is readily distinguishable from this case for the same reasons set forth in *General Teamsters*, and it does not support Plaintiffs' argument that holding them to the terms of the union membership and dues authorizations they voluntarily signed would violate public policy.

## CONCLUSION

Plaintiffs' claims fail as a matter of law on the facts alleged in the Complaint, and thus the Complaint should be dismissed.

DATED:  May 24, 2019                           Respectfully submitted,

By: /s/ Scott A. Kronland
Scott A. Kronland (*pro hac vice*)
Matthew J. Murray (*pro hac vice*)
Amanda C. Lynch (*pro hac vice*)
Altshuler Berzon LLP

*Attorneys for Defendants Oregon AFSCME Council 75 and SEIU Local 503, OPEU*

Margaret S. Olney
Bennet Hartman Morris & Kaplan, LLP

*Attorney for Defendant Oregon AFSCME Council 75*

James S. Coon
Thomas, Coon, Newton & Frost

*Attorney for Defendant SEIU Local 503, OPEU*