SCOTT A. KRONLAND (Lead Counsel, *pro hac vice*)
MATTHEW J. MURRAY (*pro hac vice*)
AMANDA C. LYNCH (*pro hac vice*)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
E-mail: skronland@altber.com
        mmurray@altber.com
        alynch@altber.com

*Attorneys for Defendants Oregon AFSCME Council 75 and SEIU Local 503, OPEU*

[Additional counsel listed on following page]

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LORIANN ANDERSON, KERRIN FISCUS, KENNETH HILL, RENE LAYTON, MICHAEL MILLER, BERNARD PERKINS, DENNIS RICHEY, KATHIE SIMMONS, KENT WILES, and MELINDA WILTSE, as individuals and representatives of the respective requested classes,<br><br>          Plaintiffs,<br><br>     v.<br><br>SERVICE EMPLOYEES INTERNATIONAL UNION (SEIU) LOCAL 503, OREGON PUBLIC EMPLOYEES UNION (OPEU); OREGON AFSCME COUNCIL 75, labor organizations; KATY COBA, in her official capacity as Director of the Oregon Department of Administrative Services; JACKSON COUNTY, LANE COUNTY, MARION COUNTY, | Case No. 3:18-cv-02013-HZ<br><br>**UNION DEFENDANTS' NOTICE OF SUBSEQUENT AUTHORITY** |

WALLOWA COUNTY, CITY OF
PORTLAND, political subdivisions of the
State of Oregon; WESTERN OREGON
UNIVERSITY, a public higher educational
institution; NORTHWEST SENIOR &
DISABILITY SERVICES, a local
intergovernmental agency,

           Defendants.

_____

[Counsel continued from previous page]

MARGARET S. OLNEY, OSB No. 881359 (Local Counsel)
BENNETT HARTMAN MORRIS & KAPLAN, LLP
210 SW Morrison Street, Suite 500
Portland, OR 97204-3149
Telephone: (503) 227-4600
Facsimile: (503) 248-6800
E-mail: olneym@bennetthartman.com

*Attorney for Defendant Oregon AFSCME Council 75*

JAMES S. COON, OSB No. 771450 (Local Counsel)
THOMAS, COON, NEWTON & FROST
820 SW Second Ave., Suite 200
Portland, OR 97204
Telephone: (503) 228-5222
Facsimile: (503) 273-9175
E-mail: jcoon@tcnf.legal

*Attorney for Defendant SEIU Local 503, OPEU*

Defendants Oregon AFSCME Council 75 and SEIU Local 503, OPEU respectfully give notice of the Order Granting Defendants' Motion to Dismiss in *Terry C. Cooley v. California Statewide Law Enforcement Ass'n, et al.*, No. 2:18-cv-02961-JAM-AC, Dkt. 66 (E.D. Cal. July 9, 2019). The Order is attached. The Order is relevant to the Union Defendants' pending Motion to Dismiss (Dkt. 24), and the other Defendants' joinders in that motion (Dkts. 28, 29, 38, 39, 51, 52). The Order addresses claims under 42 U.S.C. §1983 challenging the deduction of union dues based on union membership and dues deduction authorization agreements signed before *Janus v. AFSCME, Council 31*, 138 S.Ct. 2448 (June 27, 2018). The same legal issues are presented in this case.

DATED: July 9, 2019

Respectfully submitted,

By: /s/ Matthew J. Murray
Scott A. Kronland (*pro hac vice*)
Matthew J. Murray (*pro hac vice*)
Amanda C. Lynch (*pro hac vice*)
Altshuler Berzon LLP

*Attorneys for Defendants Oregon AFSCME Council 75 and SEIU Local 503, OPEU*

Margaret S. Olney
Bennet Hartman Morris & Kaplan, LLP

*Attorney for Defendant Oregon AFSCME Council 75*

James S. Coon
Thomas, Coon, Newton & Frost

*Attorney for Defendant SEIU Local 503, OPEU*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY C. COOLEY, on behalf of himself and all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CALIFORNIA STATEWIDE LAW ENFORCEMENT ASSOCIATION, et al.,<br><br>　　　　　Defendants. | No. 2:18-cv-02961-JAM-AC<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS** |

　　This case arises out of Plaintiff Terry Cooley's attempt to end his union membership after the Supreme Court's decision in Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council 31, 138 S. Ct. 2448 (2018) ("Janus"). Terry Cooley ("Plaintiff" or "Mr. Cooley"), brings this putative class action alleging the California State Law Enforcement Association ("CSLEA" or "the Union") violated his constitutional rights by refusing to accept his resignation from union membership, by continuing to deduct union-related fees from his paycheck, and for having assessed him the equivalent of now-impermissible agency fees. Mr. Cooley seeks a declaratory judgment, an injunction, and a refund of certain payments made to the Union.

　　CSLEA and the California Association of Law Enforcement Employees ("CALEE"; and with CSLEA, the "Union Defendants") move

1

1  to dismiss Mr. Cooley's claims.  Union Mot., ECF No. 58.
2  Defendant Xavier Becerra (the "State") moves to dismiss Mr.
3  Cooley's claims that California Government Code Sections 1152(a)
4  and 1153(a) are unconstitutional.  State Mot., ECF No. 59.
5       For the reasons set forth below, this Court GRANTS the Union
6  Defendants' and State's motions.[1]
7            I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND
8       A recitation of the primary factual allegations in this case
9  can be found in a prior order issued by this Court and will not
10 be repeated here.  See Cooley v. California Statewide Law Enf't
11 Ass'n, No. 2:18-CV-02961-JAM-AC, 2019 WL 331170, at *1-2 (E.D.
12 Cal. Jan. 25, 2019).  In that prior order, this Court denied Mr.
13 Cooley's Motion for a Preliminary Injunction, finding, among
14 other things, that he failed to establish a likelihood of success
15 on the merits of his claims.  Id.; PI Order, ECF No. 42.
16      On February 22, 2019, Mr. Cooley filed a First Amended
17 Class-Action Complaint ("FAC") alleging five counts:
18 (1) declaratory judgment; (2) injunctive relief; (3) monetary
19 relief under 42 U.S.C. § 1983; (4) conversion and trespass to
20 chattels; and (5) unjust enrichment.  FAC, ECF No. 50, ¶¶ 58-68.
21 The FAC includes additional allegations regarding Mr. Cooley's
22 purported union membership application (¶¶ 27-32); allegations
23 that California Government Code Sections 1152(a) and 1153(a) are
24 unconstitutional (¶¶ 38-40); and allegations as to certain
25 anticipated affirmative defenses (¶¶ 50-57).  But the foundation

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for June 4, 2019.

2

of the FAC remains the same as in the original complaint: that the Union violated Mr. Cooley's constitutional rights by refusing to accept his resignation and by continuing to collect money from his paycheck. Mr. Cooley seeks a refund of all compulsory fees paid before Janus, and all dues paid after Mr. Cooley's attempted resignation in the wake of Janus.

The Union Defendants move to dismiss the FAC in its entirety. Union Mot., ECF No. 58. The State moves to dismiss Mr. Cooley's claims that California Government Code Sections 1152(a) and 1153(a) are unconstitutional. State Mot., ECF No. 59. The Union Defendants join the State's motion. ECF No. 60. Mr. Cooley opposes the motions. Opp'n to Union Mot., ECF No. 61; Opp'n to State Mot., ECF No. 62.

## II. OPINION

### A. Right to Resign Membership Immediately

Mr. Cooley argues that, under Janus, he has a constitutional right to resign his union membership at his discretion and with immediate effect. As this Court explained in its prior order, Janus did not explicitly announce the right of resignation Mr. Cooley seeks to enforce. PI Order at 5-6. Janus invalidated non-consensual fees charged by unions to nonmembers (i.e. "agency fees"). Janus, 138 S. Ct., at 2486. The relationship between unions and their members was not at issue in Janus. Id. at 2461. Here, unlike in Janus, Mr. Cooley voluntary agreed to become a dues-paying member of the Union, and acknowledged restrictions on when he could withdraw from membership. ECF No. 50-9. Janus did not automatically undo Mr. Cooley's agreement to be a member of the Union, nor did it render the collective bargaining

3

agreement's withdrawal limitation provision unenforceable. See Cohen v. Cowles Media Co., 501 U.S. 663, 672 (1991).

B.   Refund of All Dues Paid Post-*Janus*

Mr. Cooley further contends, with his attempted resignation after Janus, he revoked any purported consent to pay the Union and that the Union must therefore refund to him all dues deducted from his paycheck after he announced his desire to withdraw from the Union. But, as this Court has previously explained, the continued deduction of dues by the Union here does not offend the requirement of freely given, affirmative consent of nonmembers discussed in Janus. PI Order at 7-8.

The collective bargaining agreement's limitation on the period of membership withdrawal is valid and enforceable, as discussed above, and Mr. Cooley's consent carries through his membership agreement. Mr. Cooley knowingly agreed to become a dues-paying member of the Union, rather than an agency fee-paying nonmember, because the cost difference was minimal. FAC ¶ 13. That freely-made choice was not without consequences: Mr. Cooley had to pay dues as long as he remained a member; he could only withdraw from membership within a certain time frame; and, as a matter of logic and consistent with the structure of this arrangement, if he did not withdraw during that time frame his membership would automatically continue. ECF Nos. 50-1, 50-9. This was valid assent, and an intervening change in law does not taint that consent or invalidate his contractual agreement. See Brady v. United States, 397 U.S. 742, 757 (1970).

This Court acknowledges Mr. Cooley's reference to his prior contractual arguments in order to preserve them for appeal.

4

Opp'n to Union Mot. at 7-9, n.1.  As before, this Court is unpersuaded by these arguments.  Moreover, while Mr. Cooley contends he did not affirmatively agree to continue his union membership after June 30, 2016, it is worth noting that he did not, despite paying dues after June 30, 2016, seek to assert these contract-based arguments of non-membership until the disparity in payments for members and non-members increased substantially after Janus was decide.

    Thus, the Union was contractually authorized to continue collecting agreed-upon dues from Mr. Cooley, a union member.

    C.    Refund of Compulsory Portion of Membership Dues Paid Pre-*Janus*

    Mr. Cooley asserts an entitlement to a refund of the compelled portion of his membership dues – equivalent to the Union's charged fair-share service fee (or agency fee) – paid to the Union before Janus was decided.  FAC ¶¶ 63(a), 68(a).  Mr. Cooley reasons that, even though he voluntarily agreed to join the Union and pay full membership dues, in the pre-Janus world he would have, at minimum, been compelled to pay the Union an agency fee.  Mr. Cooley contends that Janus invalidated such agency fees and, because Janus applies retroactively, a refund is warranted.  This Court finds that the Union owes Mr. Cooley no such refund.

    First, Mr. Cooley made an affirmative choice to become a member of the Union, obligating him to pay full membership dues.  As a union member, Mr. Cooley acknowledges he never paid an "agency fee."  Opp'n to Union Mot. at 12 ("Mr. Cooley never paid agency fees or fair-share fees to anyone; he is demanding a return of the compulsory portion of his union-membership dues.").

5

1  But the Union membership dues are deducted as a single charge,
2  not a split payment for compulsory fees and some extra membership
3  charge in the manner for which Mr. Cooley seeks reimbursement.
4  See ECF No. 50-4.  Mr. Cooley's contractual dues payments to the
5  Union were in no part compulsory.  Mr. Cooley is not entitled to
6  a reimbursement for compulsory agency fees which he never paid.
7       Second, and independently, Mr. Cooley's argument relies on
8  Janus applying retroactively in a manner this Court does not
9  sanction.  This Court acknowledges the general rule that a
10 "controlling interpretation of federal law must be given full
11 retroactive effect."  Harper v. Virginia Dep't of Taxation, 509
12 U.S. 86, 97 (1993).  But in Janus the Supreme Court itself did
13 not specify whether the plaintiff was entitled to retrospective
14 monetary relief for conduct the Supreme Court had authorized for
15 the previous forty years.  See Janus, 138 S. Ct. at 2486
16 (remanding for further proceedings).  This Court declines to
17 forge new ground and create such liability here.  Moreover, this
18 Court notes that numerous lower courts have denied this
19 retrospective monetary relief, finding the unions' good-faith
20 reliance on then-existing law bars liability under Section 1983.
21 See, e.g., Babb v. California Teachers Ass'n, 378 F. Supp. 3d 857
22 (C.D. Cal. 2019) (collecting cases).
23    Mr. Cooley's claims seeking a reimbursement of the
24 compulsory portion of his union dues are dismissed.
25      D.   Constitutionality of California Government Code
26           Sections 1152(a) and 1153(a)
27    Mr. Cooley contends that a public employer must immediately
28 halt union-related payroll deductions upon learning that an

6

1  employee has withdrawn his or her "affirmative consent" to those
2  assessments. FAC ¶ 40 (citing Janus). Mr. Cooley submits that
3  California Government Code Sections 1152(a) and 1153(a) require
4  public employers to divert employees' wages to the union upon the
5  union's request, regardless of whether the employee consents to
6  the deductions and even if the employee specifically instructs
7  the employer not to divert his wages to the union. Opp'n to
8  State Mot. at 1. Thus, Mr. Cooley argues, Sections 1152(a) and
9  1153(a) are unconstitutional because they prevent public
10 employers from ending those allegedly impermissible deductions.
11 Id. ¶¶ 38-40, 58(e), 59(d), 60(d).
12     Mr. Cooley's argument fails for two reasons. First, this
13 argument hinges on a finding that Mr. Cooley has a First
14 Amendment right to immediately resign union membership and cease
15 paying dues. But, as discussed above, Janus did not announce
16 such a right and no such right exist here. See supra. Second,
17 the argument fails for the independent reason that the Union's
18 refusal to immediately accept Mr. Cooley's resignation and cease
19 fee deductions does not constitute state action.
20     It is well-settled that the First Amendment protects
21 individuals only from state action, not private action. See,
22 e.g., Manhattan Cmty. Access Corp. v. Halleck, 139 S. Ct. 1921,
23 1928 (2019). There is no argument that the Union is acting as
24 the state, or that the state itself took direct action. Under
25 these circumstances, "a State normally can be held responsible
26 for a private decision only when it has exercised coercive power
27 or has provided such significant encouragement, either overt or
28 covert, that the choice must in law be deemed to be that of the

State." Blum v. Yaretsky, 457 U.S. 991 (1982).  Mr. Cooley contends that the Union's failure to cease deductions is grounded in compliance with Sections 1152(a) and 1153(a), rather than a binding obligation to pay based on the terms of his membership. Opp'n to State Mot. at 3.  This theory, unsupported by factual allegations, is insufficient to withstand a motion to dismiss. See Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).  Indeed, the FAC includes allegations that the Union attributed its refusal to accept the resignation to existing contractual rights based in Article 3.1.A.1. of the collective bargaining agreement, not any mandate of Sections 1152(a) and 1153(a).  FAC ¶ 22.

Even still, the existence of these provisions does not amount to coercive power or compulsion by the state itself.  See Roberts v. AT&T Mobility LLC, 877 F.3d 833, 845 (9th Cir. 2017), cert. denied, 138 S. Ct. 2653, 201 L. Ed. 2d 1051 (2018) ("Permission of a private choice cannot support a finding of state action, and private parties do not face constitutional litigation whenever they seek to rely on some statute governing their interactions with the community surrounding them.") (internal quotation marks and citations omitted); see also Apao v. Bank of New York, 324 F.3d 1091, 1094-95 (9th Cir. 2003). Holding otherwise, particularly where, as here, the state took no direct action and the parties have existing contractual rights, would stretch state action doctrine beyond its current limits.

Nor does the Union's refusal to accept the resignation qualify as state action under any other Supreme Court test.  See Naoko Ohno v. Yuko Yasuma, 723 F.3d 984, 995 (9th Cir. 2013) ("The Supreme Court has articulated four tests for determining

1  whether a [non-governmental person's] actions amount to state
2  action: (1) the public function test; (2) the joint action test;
3  (3) the state compulsion test; and (4) the governmental nexus
4  test.") (internal quotation marks and citations omitted).
5        Thus, Mr. Cooley's constitutional challenge to California
6  Government Code Sections 1152(a) and 1153(a) is dismissed.
7  Accordingly, Defendant Xavier Becerra is dismissed from the suit.
8        E.   Claims Against CALEE
9        The Union Defendants argue that any claims against CALEE
10 must be dismissed because the FAC contains no allegations that
11 CALEE participated in any of the wrongful conduct and does not
12 allege how CALEE harmed Mr. Cooley.  Union Mot. at 4.
13 Mr. Cooley's opposition does not address this point, and the
14 Court takes this omission as a concession by Plaintiff that CALEE
15 should be dismissed as a defendant in this case. This Court also
16 agrees with the Union Defendants' arguments.  Accordingly,
17 Defendant California Association of Law Enforcement Employees is
18 dismissed from the suit.
19       F.   Conclusion
20       The FAC's five counts seek relief on the overlapping legal
21 theories addressed above.  Mr. Cooley's suit rises and falls with
22 his claims of constitutional rights violations under Janus.
23 Because Mr. Cooley's legal theories fail to support any of the
24 causes of action, each count of the FAC is dismissed.
25                        III.   ORDER
26       For the reasons set forth above, this Court GRANTS the Union
27 Defendants' Motion to Dismiss (ECF No. 58) and GRANTS the State's
28 Motion to Dismiss (ECF No. 59).

9

     While leave to amend should be freely given under certain circumstances, Fed. R. Civ. P. 15(a), in this case Plaintiff has already amended his complaint once and, given that the legal issues clearly predominate over any factual disputes, the Court finds that a second bite at the apple is futile. Plaintiff's First Amended Complaint is dismissed with prejudice.

     IT IS SO ORDERED.

Dated: July 9, 2019

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE